Abraham C. Bates (12440)
Steven D. Crawley (0750)
WASATCH ADVOCATES, LLC
4525 Wasatch Blvd, Suite 300
Salt Lake City, Utah 84124
Telephone: (801) 662-0077
Email: abe@slclawfirm.com
Email: steven@crawleylaw.net

*Attorneys for Plaintiffs TIMOTHY R. BELL and JENNIFER BELL*

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| TIMOTHY R. BELL, an individual; and JENNIFER BELL, an individual,<br><br>     Plaintiffs,<br><br>vs.<br><br>COUNTRYWIDE BANK, N.A. d/b/a BANK OF AMERICA CORPORATION, a Delaware corporation; BAC HOME LOANS SERVICING, LP, a Texas limited partnership; RECONTRUST COMPANY, N.A., a national association; and DOEs 1-5,<br><br>     Defendants. | **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' THID AMENDED COMPLAINT**<br><br>Case No. 2:11-cv-00271-BSJ<br><br>The Honorable Bruce S. Jenkins |

Plaintiffs Timothy R. Bell and Jennifer Bell, by and through their counsel of record, hereby submit the following Memorandum in Opposition to Defendants' Motion to Dismiss Plaintiffs' Third Amended Complaint.

## INTRODUCTION

Pursuant to oral arguments, as well as an order signed by the Court on September 21, 2011, Plaintiffs were granted leave to amend their second amended complaint as to claims

1

against Defendants BAC Home Loans Servicing, LP ("BAC") and Recontrust Company, N.A. ("Recontrust").  *See* Aug. 31, 2011 Minute Entry ("[g]rants motion to dismiss as to Recontrust & Bank of America, w/o prejudice, to amend"); *see also* Sept. 21, 2011 Order at 2 ("Plaintiffs are hereby granted leave to amend their complaint as to their claims against [Recontrust], Bank of America Corporation, and [BAC]").  Accordingly, Plaintiffs filed their third amended complaint ("Complaint") stating causes of action against one or all of Defendants for preliminary injunction, breach of contract, and promissory estoppel.  *See generally* Th. Am. Compl.

Defendants now seek to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and because the Complaint purportedly exceeds the scope of the Court's grant of leave to amend.  *See generally* Mot. to Dismiss.  As set forth below, the Complaint does not exceed the scope of the Court's grant of leave to amend and the Complaint does not fail to state a claim upon which relief can be granted.  Therefore, Defendants' Motion to Dismiss should be denied.

## <u>STANDARD OF REVIEW</u>

A motion to dismiss under Rule 12(b)(6) is only proper where the Complaint fails to "state[] a plausible claim for relief".  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009).  Further, under a Rule 12(b)(6) motion, the Court must "accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the non-moving party." *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000) (internal quotations omitted).

## ARGUMENT

Plaintiffs' Complaint does not exceed the scope of the Court's grant of leave to amend and does not otherwise fail to state a claim upon which relief can be granted. As set forth below, (1) the addition of claims for preliminary injunction and breach of contract is proper and (2) Plaintiffs have stated claims for preliminary injunction, breach of contract and promissory estoppel upon which relief can be granted.

## I.   PLAINTIFFS HAVE NOT EXCEEDED THE SCOPE OF THE COURT'S GRANT OF LEAVE TO AMEND.

Defendants first contend that the Complaint's inclusion of claims for preliminary injunction and breach of contract "exceed[s] the scope of amendments permitted by this Court." Mem. in Supp. at 5. First, the August 31, 2011 minute entry states that the Court "[g]rants, motion to dismiss as to Recontrust & Bank of America, w/o prejudice, to amend". Aug. 31, 2011 Minutes, Docket No. 67. Second, the September 21, 2011 signed order states that "Plaintiffs are hereby granted leave to amend their complaint as to their claims against [Recontrust], Bank of America Corporation, and [BAC]." Sept. 21, 2011 Order, Docket No. 69.

The documents signed and/or entered by the Court do not specify the exact claims Plaintiffs can add, and the only limit placed on Plaintiffs' amendment is that the claims pertain to Recontrust, Bank of America Corporation, or BAC. Because Plaintiffs have "amend[ed] their complaint as to their claims against [Recontrust], Bank of America Corporation, and [BAC]", the Complaint does not exceed the scope of the leave to amend granted by the Court. *Id.* Further, Defendants had an opportunity to object to the form of the order signed by the Court, or to request that the order be more specific as to the claims Plaintiffs could bring, but Defendants failed to do so. *Id.* Accordingly, Plaintiffs have not exceeded the scope of the leave to amend

expressly granted to them by the Court's August 31 minute entry or the Court's signed September 21 order.

Additionally, the August 30, 2011 hearing transcripts demonstrate that Plaintiffs have not exceeded the scope of the Court's grant of leave to amend.  At oral argument, Plaintiffs' counsel stated "I would like to bring an amended complaint seeking judicial determination about the right of ReconTrust to foreclose this trust deed".  Aug. 30, 2011 Hr'g. Tr. 5.  Defendants do not dispute that the Court granted Plaintiffs leave to amend on this issue.  Mem. in Supp. at 6.  More importantly, Plaintiffs' claim for preliminary injunction seeks to do exactly what Plaintiffs' counsel requested at oral argument, that is, enjoin Recontrust from foreclosing on Plaintiffs' trust deed.  Plaintiffs have essentially asked the Court to find that, pursuant to Utah statute, Recontrust does not have authority to exercise the power of sale in Utah.  Th. Am. Compl. ¶¶ 53-54.  It is clear that Plaintiffs' claim for preliminary injunction "seek[s] judicial determination about the right of ReconTrust to foreclose", Aug. 30, 2011 Hr'g Tr. 5, and therefore, it is clear that Plaintiffs have not violated the Court's grant of leave to amend.

Second, at oral argument, Plaintiffs' counsel raised questions regarding "loan modification issues".  *Id*.  While promissory estoppel was mentioned, the Court never stated that promissory estoppel was the only cause of action Plaintiffs could add in relation to BAC's behavior during the loan modification process.  Rather, the Court found that the questions raised by Plaintiffs in relation to the loan modification process, as well as Recontrust's ability to foreclose, were "important questions".  *Id*. at 22.  Because Plaintiffs' breach of contract claim, like the promissory estoppel claim, is tied to the loan modification issues that were before the Court at oral arguments, the Court should not find that Plaintiffs' breach of contract claim

4

exceeds the scope of the grant of leave to amend.

The August 31, 2011 minute entry and September 21, 2011 order do not specify the exact claims that Plaintiffs can add to their Complaint, but only specify that the claims relate to Recontrust, Bank of America Corporation, or BAC. *See* Aug. 31, 2011 Minutes; Sept. 21, 2011 Order. Additionally, the hearing transcripts in no way preclude Plaintiffs from challenging Recontrust's ability to foreclose, which Plaintiffs have done with their preliminary injunction claim, and the hearing transcripts do not limit the loan modification claims Plaintiffs can bring to promissory estoppel. Further, inasmuch as Defendants claim that Plaintiffs should be afforded no latitude for a "failure to follow the federal rules", Mem. in Supp. at 6, Defendants' claim should be disregarded. The Court granted Plaintiffs leave to amend pursuant to oral arguments, pursuant to a minute entry, and pursuant to a signed and written order. Plaintiffs did not fail to follow any rules and should not be treated any differently by the Court as a result.

## II.   PLAINTIFFS HAVE STATED CLAIMS UPON WHICH RELIEF CAN BE GRANTED.

Plaintiffs have stated claims for (1) preliminary injunction, (2) breach of contract and (3) promissory estoppel upon which relief can be granted.

### A.  Plaintiffs have stated a claim for preliminary injunction upon which relief can be granted.

Defendants argue that Plaintiffs' claim for preliminary injunction should be dismissed for two reasons: first, because it is "not a separate claim in and of itself", Mem. in Supp. at 6, and second, because Plaintiffs' "allegations do not suffice to state a claim or support a preliminary injunction." *Id.* at 8. As demonstrated below, it is immaterial whether Plaintiffs captioned their request for preliminary injunction as a "cause of action" and Plaintiffs have satisfied the four

elements required of a request for preliminary injunction.  Accordingly, Plaintiffs' claim for preliminary injunction should not be dismissed.

### 1.  Plaintiffs' request for preliminary injunction should not be dismissed merely because it is captioned as a cause of action.

Defendants first claim that Plaintiffs' cause of action for preliminary injunction should be dismissed because it "is not a separate claim in and of itself, but merely a form of relief."  Mem. in Supp. at 6.  Essentially, Defendants have claimed that merely because Plaintiffs captioned their request for preliminary injunction as a "cause of action", it should be dismissed; however, such a claim is erroneous and unsupported by the cases to which Defendants cite.

In *Hoverman v. CitiMortgage, Inc.*, No. 2:11-cv-00118, 2011 WL 4403968, at *10 (D. Utah Aug. 4, 2011), the court dismissed claims for declaratory judgment and injunctive relief, not for a failure to be "separate claim[s] in and of [themselves]", Mem. in Supp. at 6, but because the underlying "causes of action fail[ed] as a matter of law".  Similarly, in *Domingo v. Direct Mortg. Corp.*, No. 2:11-cv-00464, 2011 WL 4403968, at *5 (D. Utah Sept. 21, 2011), the court dismissed a claim for injunctive relief because it was "dependent on [p]laintiff's substantive claims, which … fail to state a claim upon which relief can be granted."  Accordingly, the Court should not dismiss Plaintiffs' claim for preliminary injunction, merely because it was captioned as a "cause of action".  Rather, the Court's inquiry should focus on whether the underlying claims for Plaintiffs' request for relief are plausible.

The primary substantive claim underlying Plaintiffs' request for preliminary injunction is that Recontrust does not have the right to exercise the power of sale in Utah.  Compl. ¶ 54.  As explained below, Plaintiffs have stated a plausible claim challenging Recontrust's authority to foreclose, and therefore, Plaintiffs' claim for preliminary injunction should not be dismissed.

**2.  Plaintiffs have satisfied the elements required for a preliminary injunction.**

A preliminary injunction is proper where a party can show "(1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant is the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *GMC v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007).  Plaintiffs have met all four elements in this case, and therefore, Plaintiffs request for relief should not be dismissed.

**a.  Plaintiffs have demonstrated a likelihood of success on the merits.**

Defendants contend that Plaintiffs lack a substantial likelihood of success on the merits based on the National Banking Act's ("NBA") purported preemption of Utah Code Ann. §§ 57-1-21 and 57-1-23.  Mem. in Supp. at 8.  As explained below, even though Recontrust is governed by the NBA, the NBA does not preempt the Utah Code's provisions regarding the power of sale. Because Recontrust is obviously not an "active member of the Utah State Bar", U.C.A. § 57-1-21(a)(i), or a "title insurance company", U.C.A. § 57-1-21(a)(iv), it is likely that Plaintiffs will succeed on the merits of their claim that Recontrust is not a proper trustee for foreclosure sale purposes.  Compl. ¶ 53.

According to the NBA:

The Comptroller of the Currency shall be authorized and empowered to grant … by special permit to national banks applying therefore, <u>when not in contravention of State or local law</u>, the right to act as trustee … or in any other fiduciary capacity in which State banks, trust companies, or other corporations which come into competition with national banks are permitted to act under the laws of the State in which the national bank is located.

12 U.S.C.A. § 92a(a) (West 2011) (emphasis added).  According to the Utah Code "[t]he power of sale conferred by Section 57-1-23 may only be exercised by the trustee of a trust deed if the

trustee is qualified under Subsection (1)(a)(i) or (iv)." UTAH CODE ANN. § 57-1-21(3) (West

2011).  Subsection (1)(a)(i) refers to "any active member of the Utah State Bar" and subsection

(1)(a)(iv) refers to "any title insurance company". UTAH CODE ANN. § 57-1-21 (West 2011).

Recontrust is neither an active member of the Utah State Bar nor a title insurance company and

therefore, according to the "State or local law" of Utah, Recontrust cannot exercise the power of

sale.  Further, active members of the Utah State Bar and title insurance companies do not

"compete with national banks" and therefore, Recontrust cannot claim that its exercise of the

power of sale "shall not be deemed in contravention of State or local law".  12 U.S.C.A. § 92a(b)

(West 2011).  Inasmuch as Defendants claim that title insurance companies compete with

national banks, Defendants have offered nothing to support their bare assertion, and such an

assertion should not be the basis of a dismissal without more.  *See* Mem. in Supp. at 11, n.10

("Utah law clearly permits 'corporations which compete with national banks', *e.g.*, title

insurance companies, to act as trustee…").

        Recontrust attempts to stretch the NBA in order to say that no matter what a state's law

dictates, Recontrust can essentially do whatever it wants in any other state as long as its actions

are permitted by Texas law.  *See* Mem. in Supp. at 10 ("Texas law specifically allows

ReconTrust to exercise the power of sale in Utah.").  This court has previously heard such an

illogical argument and rejected the same.  *See Cox v. ReconTrust Co., et al.*, No. 2:10-cv-492

CW, 2011 WL 835893, at *6 (D. Utah Mar. 3, 2011) ("the court is unconvinced by ReconTrust's

argument that § 92a(b) dictates that the court look to some state law other than Utah state law to

evaluate ReconTrust's foreclosure activities in Utah.").  Further, such an argument is

unsupported by the OCC, despite Defendants' citation to numerous interpretive letters.

The OCC has long held that:

> section 92a authorizes a national bank that has been granted fiduciary powers to exercise those powers in any state, provided that within each state, the state may bar the exercise of such fiduciary powers as the state also does not allow for its own state-chartered institutions.  In essence, with respect to national bank fiduciary powers in a given state, we believe section 92a applies the same standards to all national banks, both those headquartered in that state and those that are "out-of-state banks" with respect to that state.

OCC Inter. Ltr. 695 (Mar. 1, 1996), 1996 WL 187825, at *1.  The letter goes on to state that "a national bank may exercise any of the fiduciary powers granted in section 92a(a) in any state unless that state both prohibits national banks and restricts its own state institutions from exercising that fiduciary power."  *Id*. at *17.  While Defendants go to great lengths to turn the Court's attention to where exactly Recontrust is "located", Mem. in Supp. at 9-11, the OCC is clear that it does not matter whether a national bank like Recontrust is headquartered within or without the state of Utah, "[Utah] may bar the exercise of [the power of sale] as [it] also does not allow for its own state-chartered institutions."  OCC Inter. Ltr. 695 at *1.  In other words, regardless of where Recontrust is "located", Recontrust may not exercise the power of sale in Utah if "[Utah] both prohibits national banks and restricts its own state institutions from exercising [the power of sale]."  *Id*. at *17.  Utah clearly prohibits both national banks and its own state banks from exercising the power of sale, and therefore, according to the OCC itself, Recontrust cannot exercise the power of sale in Utah pursuant to 12 U.S.C. § 92a.  Inasmuch as Recontrust attempts to use OCC interpretive letters to persuade the Court that Texas law can govern the citizens of Utah, Plaintiffs address each letter in turn.

Defendants first cite to OCC Interpretive Letter 1103 ("Letter 1103").  Mem. in Supp. at 9.  In Letter 1103, the issue was that an out-of-state bank wanted to conduct fiduciary activities

in North Carolina, but was subjected to extra requirements not applicable to state fiduciaries. *See* Letter 1103 at 1-2, Exhibit C to Mot. to Dismiss.  The OCC's holding was merely that the national bank could "act in a fiduciary capacity permitted for state fiduciaries in North Carolina". *Id*. at 2.  Nothing in Letter 1103 stands for the proposition that because the national bank was allowed to exercise certain fiduciary services in its home state, that it could do the same in North Carolina regardless of what North Carolina's laws stated.

Defendants next cite to OCC Interpretive Letter 866 ("Letter 866").  Mem. in Supp. at 10. Letter 866 is readily distinguishable from the instant action.  Letter 866 involves a bank that exercises "core fiduciary functions" in Michigan and nowhere else.  Letter 866 at 2, Exhibit D to Mem. in Supp.  The Michigan bank did not seek to exercise core fiduciary functions outside of Michigan, but only sought to do such things as "market[] its services and solicit[] business through advertising, telephone, mail or electronic communications…".  *Id*. at 9.  In Utah, Recontrust has sought to do far more than "market its services" or "solicit business"; upon information and belief, Recontrust records thousands of documents with county recorder offices and conducts thousands of foreclosures every year.

Further, Letter 866 implies that a national bank will not be governed by the laws of only one state if it exercises fiduciary powers in multiple states.  *See* Letter 866 at 9 (noting that "Michigan is the only state whose law is incorporated in the provisions of section 92a" because Michigan "is the only state in which the Bank acts in a fiduciary capacity"); *see also Citizens & Southern Nat. Bank v. Bougas*, 434 U.S. 35, 45 (1977) (finding unpersuasive an attempt to construe the NBA to mean that a bank is only "located" in one state); OCC Inter. Ltr. 695 (Mar. 1, 1996), 1996 WL 187825, at *12 ("[t]he use of a singular term in section 92a … does not imply

that Congress intended that the provision of section 92a would apply only to one state for each national bank.").  According to Letter 866, as well as prior OCC interpretation and the United States Supreme Court, if a national bank exercises core fiduciary functions in multiple states, the laws of those states can apply to the exercise of fiduciary powers.  In Utah, Recontrust obviously conducts core fiduciary functions by recording thousands of documents and conducting thousands of foreclosure sales, and therefore, Recontrust is governed by the laws of the state of Utah inasmuch as they are not inconsistent with the NBA.  Because Utah does not allow its own state institutions to exercise the power of sale, it can also limit Recontrust's exercise of the power of sale.

Defendants next cite to OCC Interpretive Letter 872 ("Letter 872").  Mem. in Supp. at 10. In Letter 872, the OCC first addresses, like in Letter 866, whether an Ohio bank can exercise non-core fiduciary functions, such as marketing and advertising, in California.  Letter 872 at 8, Exhibit E to Mem. in Supp.  The OCC found no problem with such a practice; however, when the OCC addressed whether the Ohio bank could exercise core fiduciary functions in California, it stated that the Ohio bank could only do so "to the extent that these [fiduciary functions] are not in contravention of California law."  *Id*.  Contrary to Defendants' interpretation of the NBA, the OCC did not decide that the Ohio bank could do whatever it wanted in California so long as its actions were permitted by Ohio law.  *See* Mem. in Supp. at 10 ("Texas law specifically allows ReconTrust to exercise the power of sale in Utah.").  Further, unlike the instant action, the California laws that were deemed preempted by Letter 872 specifically placed restrictions on national banks without placing similar restrictions on California's state institutions.  *See generally* Letter 872 at 9-10.  While Utah restricts national banks from exercising a core

11

fiduciary function like the power of sale, it also restricts its own state institutions, and therefore, Utah Code Ann. § 57-1-21(3) is not preempted by the NBA.

Defendants next cite to an unpublished OCC interpretive letter ("Unpublished Letter"). Mem. in Supp. at 12.  The Unpublished Letter has nothing to do with this case and whether the NBA would allow the laws of one state to govern the people of another state.  In fact, Defendants only cite this letter for the proposition that the "power of sale" falls within the powers granted a national bank under the NBA.  Mem. in Supp. at 12.

Defendants next cite to OCC Interpretive Letter 973 ("Letter 973").  In Letter 973, the OCC held that a national bank could "exercise any and all fiduciary powers in any state in which it acts … to the same extent granted under applicable state laws to state fiduciaries that come into competition with national banks in such state."  Letter 973 at 2, Exhibit J to Mem. in Supp.  As explained above, Recontrust obviously "acts" in Utah when it records thousands of documents and conducts thousands of foreclosure sales each year.  Further, Letter 973 implies that Recontrust, because it "acts" in Utah, may only exercise such fiduciary powers as are also granted to state fiduciaries.  *Id*.  Once again, Utah limits the power of sale with respect to its state fiduciaries and so it may also limit the power of sale with respect to Recontrust.

Defendants lastly cite to OCC Interpretive Letter 1106 ("Letter 1106").  Unlike the instant action, Letter 1106 addresses state statutes which place limits on national banks, which limits are not also placed on state banks, and which limits fall outside of the fiduciary powers enumerated by section 92a(a).  *See generally* Letter 1106 at 3-4, Exhibit K to Mem. in Supp.  Further, Letter 1106 nowhere held that the laws of Florida governed the bank's activities in Georgia or South Carolina.  The statutes of Georgia and South Carolina were preempted because

they limited or preconditioned the exercise of fiduciary powers outside the scope of section 92a(a); not because they were in contravention of Florida's laws regarding fiduciary powers. *See id*. at 4 ("with the exception of those state laws specifically referenced in Section 92a, any state laws limiting or establishing preconditions on the exercise of fiduciary powers by a national bank are not applicable to national banks."). Accordingly, Defendants are wrong when they claim that Letter 1106 is founded on "a factual scenario nearly identical to the facts here." Mem. in Supp. at 13. Also, because Florida's laws were not held to govern the bank's activities in Georgia or South Carolina, Letter 1106 does nothing to further Defendants' erroneous legal conclusion.

In addition to numerous OCC interpretive letters, Recontrust also cites to two cases for the proposition that Plaintiffs' legal theory has been rejected. As set forth below, neither case should persuade the Court.

First, Defendants cite to *Winn v. Bank of Am., N.A.*, No. 2:11-cv-00649, 2011 U.S. Dist. LEXIS 76358, at *3-4 (D. Utah July 14, 2011). Mem. in Supp. at 8. The *Winn* court offered no analysis of the Recontrust issue, but essentially denied a temporary restraining order based on *Cox v. ReconTrust Co., N.A.*, No. 2:10-CV-492-CW, 2011 WL 835893 (D. Utah Mar. 3, 2011). *Winn*, at *4 n.4. While the *Cox* court, in its initial memorandum decision, held that Utah Code Ann. § 57-1-21 was entirely preempted by the NBA, the *Cox* court merely looked at the statute "[o]n its face" and found that because a depository institution could be a trustee, the whole statute was preempted. *Cox*, 2010 WL 2519716, at *9. The *Cox* court did not recognize the fact that depository institutions, the competitors to a national bank, could not exercise the power of sale under Utah Code Ann. § 57-1-21(3). Essentially, the question before the *Cox* court was focused on whether Recontrust could be a trustee in Utah, not whether it could exercise the

power of sale in Utah.  The issue here is not whether Recontrust can be a trustee, but whether it can exercise the power of sale, and where the *Cox* court only focused on one aspect of section 57-1-21, this Court should not follow in finding that the entire statute is preempted, including those provisions that are not contrary to the NBA.

Further, the *Cox* court later revisited its prior order and expressed skepticism about whether Utah Code Ann. § 57-1-21 was actually entirely preempted by the NBA.  *See Cox*, 2011 WL 835893, at *6 (dismissing the plaintiff's claim challenging Recontrust's ability to foreclose, *without prejudice* because it was unsure whether "ReconTrust is a competitor of Utah attorneys or title insurance companies.").  Unlike the *Cox* court, this Court should refrain from dismissing Plaintiff's claim prior to being sure whether Utah Code § 57-1-21(3) is actually preempted by the NBA.  Certainly, where there is skepticism about whether Recontrust can foreclose, Plaintiffs have stated a plausible claim for relief, and dismissal is inappropriate.

Second, Defendants cite to *Zabriskie v. ReconTrust Co.*, No. 2:08-cv-00155 (D. Utah Nov. 12, 2008) (unpublished).  Mem. in Supp. at 14-15.  First, the federal law to which *Zabriske* referred was the Home Owners' Loan Act of 1933 ("HOLA") which is governed by the Office of Thrift Supervision ("OTS").  *See Zabriskie v. ReconTrust Co.*, No. 2:08-cv-00155-BSJ, Order of 11/12/08 at 9 (D. Utah).  *Zabriskie* had nothing to do with the NBA or the OCC and therefore, *Zabriskie* should not persuade the Court to conclude that Utah Code Ann. § 57-1-21(3) is preempted by the NBA.  Further, *Zabriskie* is not in harmony with the OCC interpretive letters discussed above, which generally hold that when core fiduciary functions are exercised in any state, that particular state can limit the exercise of those powers as long as it also places similar limits on its own state institutions.  *See* OCC Letter 872 ("[Ohio bank] will be authorized to

14

engage in the fiduciary capacities listed in section 92a(a) to the extent these capacities are not in contravention of California law.").  Contrary to several OCC letters as well as the United States Supreme Court, which letters and decision are examined above, *Zabriskie* appears to hold that because Recontrust was located in Texas, it could act how it pleased in any state so long as its actions were permitted by Texas law.  *Zabriskie* at 10.  *Zabriskie* essentially stands for the same argument that the *Cox* court found to be unpersuasive, namely, that Texas law governs Recontrust's activities in Utah.  *See Cox*, 2011 WL 835893, at *6 ("the court is unconvinced by ReconTrust's argument that § 92a(b) dictates that the court look to some state law other than Utah state law to evaluate ReconTrust's foreclosure activities in Utah.").

While Defendants may find favorable an interpretation of the OTS, it is not the interpretation of the OCC and should not be the interpretation of this Court.  Additionally, the *Zabriskie* case was a challenge to what a subsidiary could do or how it could be restricted, not the national bank itself.  *Id.* at 1-2.  Therefore, the analysis was not centered on whether a national bank could be enjoined from acting as a foreclosing trustee under the Utah Code, but whether a subsidiary of a national bank could be enjoined where no such restriction applied to its parent national bank.  The *Zabriskie* case differs from the instant action in several key respects and therefore, *Zabriskie* should not persuade the Court to dismiss Plaintiffs' request for preliminary injunction.

In sum, Plaintiffs have alleged that Recontrust does not have the authority to exercise the power of sale on their home.  Compl. ¶ 54.  As demonstrated above, Plaintiffs have stated a plausible claim for relief.  Further, Plaintiffs have demonstrated a substantial likelihood of success on the merits because (1) Recontrust is not a licensed Utah attorney or title insurance

company, and (2) Utah does not allow institutions that compete with Recontrust to exercise the power of sale.  Therefore, according to the plain language of section 92a, Utah Code Ann. § 57-1-21(3) is not preempted.

### b.   Plaintiffs will suffer irreparable harm if an injunction is denied.

The Tenth Circuit has stated that "[a] plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain."  *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 269 F.3d 1149, 1156 (10th Cir. 2001).  The Complaint has established that without this preliminary injunction, Plaintiffs will lose their home to foreclosure unless they can satisfy their note obligation, which they cannot plausibly do.  Compl. ¶¶ 46-47.  The Complaint has also established that Plaintiffs' family home is a unique asset, the loss of which cannot simply be compensated with money.  Compl. ¶ 55.  Further, Utah courts as well as this Court have recently issued injunctive relief in foreclosure actions, finding that the loss of a home does constitute irreparable harm.  *See Piersall v. Mila, Inc., et al.*, No. 100916364, Order Granting Prelim. Inj. (Utah Th. Dist. Ct. Nov. 1, 2010) ("immediate and irreparable injury will result to Plaintiffs from the loss of the family home that would result from the recording of a trustee's deed terminating their ownership interest in the property"), attached as Exhibit A; *Walker v. Countrywide, et al.*, No. 2:10-cv-1187-TC, Order (D. Utah Feb. 10, 2011) (referring to Feb. 9, 2011 Hr'g Tr. 16:14-17 which states that "[i]f the foreclosure goes forth, [plaintiff] will lose her home and that is recognized in the law and just in the community as irreparable harm"), attached as Exhibit B.

Essentially, if injunctive relief is not issued, Defendants have made clear to Plaintiffs that

they will lose their home.  Compl. ¶ 46.  Further, Plaintiffs stand to have their home sold by

Recontrust, an entity that is not allowed to exercise the power of sale in Utah.  Because Utah

courts as well as this Court have found that the loss of a home to a wrongful foreclosure sale

constitutes irreparable harm, this Court should find that Plaintiffs have satisfied the element of

irreparable harm.

### c.   The threatened harm to Plaintiffs outweighs any harm that might be caused to Defendants.

Plaintiffs stand to lose their family home if a preliminary injunction does not issue.

Compl. ¶ 46.  Plaintiffs also stand to have their home sold by an entity not allowed to exercise

the power of sale by Utah statute.  Compl. ¶ 54.  Defendants offer nothing to show that they will

suffer any harm whatsoever, but merely claim that "Plaintiffs cannot establish the first two

factors of the preliminary injunction test".  Mem. in Supp. at 17.  Plaintiffs have satisfied the first

two factors of the preliminary injunction test, and because Defendants have not even identified

any harm that might be caused to them, this Court should have no trouble determining that the

harm test weighs in Plaintiffs' favor.

### d.   An injunction will not adversely affect the public interest, but actually favors the public interest.

The primary public interest at stake is not the enforcement of contracts or legitimate

business interests, Mem. in Supp. at 18, but the correct enforcement of Utah statutes.  As the

Utah Attorney General has stated "[t]he State of Utah has an interest in protecting the laws of the

State in eliminating unlawful foreclosures, and in keeping its citizens in their homes.  Because of

companies like ReconTrust, the Utah Legislature has restricted who may conduct foreclosures of

real estate trust deeds." *Cox v. ReconTrust Co., et al.*, No. 10-4117, Brief of Amicus Curiae at 1

(10th Cir. Feb. 26, 2011), attached as Exhibit C.  If the foreclosure of Plaintiffs' home is actually

lawful, an injunction will only postpone the date of the sale and will not undermine the public

interest at all.  However, if Recontrust cannot lawfully foreclose under Utah statute, which

Plaintiffs have demonstrated in this memorandum, then the public interest will be greatly

undermined as Utah's laws will be broken and certain of its citizens will lose unlawfully lose

their home.

     Further, while Plaintiffs are in default, the facts of the Complaint establish that Plaintiffs

defaulted because of inducements from Defendants.  Compl. ¶¶ 19-20.  Therefore, the Court

should not find that an injunction would offend the public interest merely because Plaintiffs are

in default.  *See* Mem. in Supp. at 18.  Lastly, the same public policies were at issue in the

foreclosure cases cited above in which injunctive relief was granted, therefore, this Court should

also find that public policy weighs in Plaintiffs' favor for purposes of injunctive relief in this

case.  *See Piersall*, attached as Exhibit A; *Walker*, attached as Exhibit B.

     In summary, Plaintiffs have satisfied the element required for a preliminary injunction to

issue.  Therefore, the Court should not dismiss Plaintiffs' request for preliminary injunction.

    **B.  Plaintiffs have stated a claim for breach of contract upon which relief can be granted.**

     In Utah, the elements for a breach of contract are: "(1) a contract, (2) performance by the

party seeking recovery, (3) breach of the contract by the other party, and (4) damages."  *Bair v.*

*Axiom Design, L.L.C.*, 2001 UT 20, ¶ 14, 20 P.3d 388.  Plaintiffs have met all four elements and

have therefore stated a plausible claim for breach of contract.

     First, the Complaint establishes the existence of a contract.  Compl. ¶ 58.  Essentially,

BAC agreed to modify Plaintiffs' mortgage loan within a few months if Plaintiffs agreed to

default on their payments and apply for a loan modification.  Compl. ¶ 19.  Second, the

Complaint establishes performance by Plaintiffs under the agreement.  Compl. ¶¶ 20-21.  Third,

the Complaint establishes a breach of the agreement by BAC, who did not modify Plaintiffs'

loan within a few months' time, but in fact lost Plaintiffs' application.  Compl. ¶ 47.  Further,

BAC's poor efforts pursuant to the agreement constitute a breach of the implied covenant of

good faith and fair dealing, Compl. ¶¶ 59-60, which also constitutes a breach of contract.  *See*

*Oakwood Village, LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 43, 104 P.3d 1226 ("violation of

[breach of good faith and fair dealing] gives rise to a claim for breach of contract.").  Fourth, the

Complaint establishes that Plaintiffs have been injured by BAC's breach because they cannot

reapply for modification, Compl. ¶ 47, cannot cure the deficiency resulting from the agreement,

Compl. ¶ 49, and face the imminent foreclosure of their home.  Compl. ¶ 46.  The Complaint

clearly establishes a plausible claim of breach of contract, and therefore, Defendants' Motion to

Dismiss should be denied.

　　　　In arguing for the dismissal of Plaintiffs' claim, Defendants mischaracterize the claim,

and therefore, their arguments should be disregarded.  First, the statute of frauds does not apply

because the agreement at issue was not an actual modification of a written contract.  Mem. in

Supp. at 19-20.  The agreement at issue was that if Plaintiffs defaulted and applied for a loan,

BAC would give them a loan within a few months' time.  Compl. ¶¶ 20, 58.  The agreement was

not a modification of a prior written contract, and therefore, the statute of frauds is inapplicable.

　　　　Second, Plaintiffs have established an agreement with definite terms.  Mem. in Supp. at

20-21.  As explained above, the terms of the agreement were that Plaintiffs would get a loan

modification within a few months' time if they defaulted and applied for a loan.  Compl. ¶ 20.

Defendants seem to assume that the agreement was the actual modification of the loan; however, the Complaint never makes such an assertion, but only asserts that the agreement was that wherein BAC would modify Plaintiffs' loan if Plaintiffs defaulted and applied.  Compl. ¶ 58. Further, Plaintiffs have demonstrated consideration because they suffered a detriment by defaulting on their loan.  *See Healthcare Services Group, Inc. v. Utah Dept. of Health*, 2002 UT 5, ¶ 17, 40 P.3d 591 ("there is consideration whenever a promisor receives a benefit or where a promise suffers a detriment, however slight.") (internal quotations omitted).  The *Osmond* case to which Defendants cite, Mem. in Supp. at 21, does not involve a party who was told to default by the lender as part of an agreement, and is therefore inapplicable to this case.  *See Osmond v. Litton Loan Servicing, LLC*, No. 1:10-cv-11, 2011 WL 1988403, at *1 ("difficulty making the mortgage payments…led to a default").

Lastly, the Complaint has clearly established that Plaintiffs were denied their contractual rights.  Mem. in Supp. at 21.  Defendants erroneously refer to the trust deed as the source of Plaintiffs' contractual rights.  *Id*.  However, the Complaint establishes that the agreement was that Plaintiffs would receive a loan modification, which they did not receive because of BAC's poor efforts to adhere to the agreement.  Compl. ¶ 47, 59.  Plaintiffs have demonstrated that they were deprived of contractual rights, and inasmuch as Defendants mischaracterize Plaintiffs' contractual rights, Defendants' arguments to the contrary should be disregarded.

Plaintiffs have met all four elements to plead a claim for breach of contract and therefore, their claim is plausible.  Accordingly, the Court should deny Defendants' Motion to Dismiss.

**C.  Plaintiffs have stated a claim for promissory estoppel upon which relief can be granted.**

Defendants contend that Plaintiffs' claim for promissory estoppel should be dismissed because Plaintiffs have not demonstrated reasonable reliance or suffered a loss.  Mem. in Supp. at 23.  Contrary to Defendants' belief, the Complaint establishes reasonable reliance and that Plaintiffs have suffered a loss, and therefore, the Complaint has stated a plausible claim for promissory estoppel.

First, Plaintiffs reasonably relied on the representations of BAC.  The Complaint establishes that Plaintiffs encountered financial struggles and while they could make payments from their savings, they needed a more long term solution.  Compl. ¶ 13-14.  BAC was the servicer of the loan and offered the long term solution that Plaintiffs needed.  Compl. ¶¶ 15-16.  However, BAC's offer of a solution to Plaintiffs' problems was conditioned on Plaintiffs' default and application for a modification.  Compl. ¶ 16-20.  Certainly where Plaintiffs had financial struggles and their servicer told them they could get a loan modification, Plaintiffs reasonably relied on BAC's representations.  As to the cases cited by Defendants, they are readily distinguishable from this case.  In *Strupat*, the plaintiff was not induced to default by the promise of a loan modification, but only claimed that the servicer promised to properly consider his application.  *Strupat v. Aurora Loan Servs. LLC*, No. 2:11-cv-00279, 2011 U.S. Dist. LEXIS 61721, at *9 (D. Utah June 9, 2011) (unpublished).  This is not a case of a promise to fairly consider an application, it is a case in which a promise was made that if you default, we will modify your loan.

In *Osmond*, like *Strupat*, the plaintiff was not induced to default.  *See Osmond*, 2011 WL

21

1988403, at *1 ("difficulty making the mortgage payments…led to a default").  In *Lund* the reliance was not reasonable because the promises made by the servicer were contrary to a written HAMP agreement.  *Lund v. CitiMortgage, Inc.*, No. 2:10-cv-01167, 2011 U.S. Dist. LEXIS 52890, at *8 (D. Utah May 17, 2011) ("HAMP Loan Trial Agreement makes clear that it is not a loan modification and that any modification would be contingent upon further approval.").  This case is nothing like *Lund* because there was not writing or other representation to make Plaintiffs' reliance on BAC's representations unreasonable.  Similar to *Lund*, the *James* case also involved a HAMP trial plan with terms contrary to any representations made by the servicer.  *See James v. Wells Fargo Bank, NA*, No. 2:10-cv-01205, 2011 U.S. Dist. LEXIS 53077, at * 11 (D. Utah May 17, 2011) (unpublished) ("[HAMP] makes clear that it is not a loan modification and that any modification would be contingent upon further approval.").

In *Burton* the promissory estoppel claim was in relation to a TILA claim, which claim was eventually conceded.  *See Burton v. JP Morgan Chase Bank, NA*, No. 2:10-cv-00674, 2011 U.S. Dist. LEXIS 34796, at *15 (D. Utah Mar. 31, 2011) (unpublished) ("plaintiffs essentially concede this argument…Accordingly, the court finds plaintiffs' claims for rescission under TILA fail").  The court did not even analyze the promissory estoppel claim, and this case should have no bearing on this Court's decision.  Lastly, in *Estrada* the plaintiff claimed that he relied on a promise of a two-percent interest rate, when in fact, the loan modification documents provided for a higher interest rate. *See Estrada v. Aurora Loan Servs., LLC*, No. 2:10-cv-01009, 2010 U.S. Dist. LEXIS 124865, at * 10 (D. Utah Nov. 23, 2010) (unpublished) ("[p]laintiff has not alleged reasonable reliance concerning the alleged 2% interest rate in light of…modification documents indicating an interest rate of 6.8%.").  Again, there is no contrary writing in this case to make

Plaintiffs' reliance on BAC's representations unreasonable.  Even if the deed of trust gave Defendants the power to foreclose, Defendants could still forbear from doing so.  The deed of trust does not state that upon default, the beneficiary must foreclose, and therefore, if BAC told Plaintiffs it would forbear from foreclosure and give them a loan modification, such a representation is in no way contrary to the deed of trust.  Mem. in Supp. at 26-27.

Alternatively, Defendants claim that Plaintiffs' reliance was unreasonable because they were already in default.  Mem. in Supp. at 25.  For purposes of a motion to dismiss, the facts of the Complaint must be accepted as true.  *Atlantic Richfield Co.*, 226 F.3d at 1160.  The Complaint establishes that despite their financial situation, Plaintiffs were still able to make payments from their savings.  Compl. ¶ 13-14.  The Complaint establishes that at the time Plaintiffs spoke with BAC, BAC acknowledged that Plaintiffs were still making payments.  Compl. ¶¶ 17, 19.  Finally, the Complaint establishes that Plaintiffs only went into default after BAC's representations.  Compl. ¶¶ 20, 65.  Accordingly, when the facts of the Complaint are accepted as true, Plaintiffs were not in default prior to BAC's representations.

The Complaint establishes that Plaintiffs reasonably relied on BAC's representations and the cases cited by Defendants, because they are not on point with this case, should not persuade the Court otherwise.  There was no written information contrary to BAC's representations, and therefore Plaintiffs' reliance was reasonable.

Second, Plaintiffs have alleged they suffered a loss.  The Complaint establishes that as a result of BAC's promises, Plaintiffs defaulted on their loan, Compl. ¶ 65, their deficiency has grown to a point that they cannot cure it, Compl. ¶ 68, Plaintiffs face the foreclosure of their home, Compl. ¶ 46, and Plaintiffs have incurred late fees and attorneys' fees.  Compl. ¶ 66.

Clearly Plaintiffs have suffered a loss as a result of their reliance on BAC's representations.

Defendants contend that Plaintiffs did not suffer a loss because they would have eventually gone into default, even though the Complaint establishes that Plaintiffs could have otherwise cured the deficiency amount caused by BAC.  Compl. ¶ 70.  Defendants make the absurd allegation that Plaintiffs "actually benefitted" from being induced to default which inducement has led to nothing but stress and costs incurred as they try to stay in their home.  Mem. in Supp. at 25.  Such an allegation should be disregarded as Plaintiffs have obviously not "benefited" from their dealings with BAC.  Lastly, Defendants claim that BAC's statements were conditional.  Mem. in Supp. at 26.  The only condition upon which the statements were predicated was that Plaintiffs stop making mortgage payments, Compl. ¶ 19, which Plaintiffs did.  Further, Defendants claim that the representations "on their face, do not instruct Plaintiffs to stop making payments", Mem. in Supp. at 26, even though the Complaint clearly establishes that BAC told Plaintiffs "they would have to stop making payments on their mortgage."  Compl. ¶ 19.

When the facts of the Complaint are accepted as true and viewed in the light most favorable to Plaintiffs, Plaintiffs reasonably relied on the representations made by BAC and they suffered a loss as a result.  Defendants do not challenge the other elements of promissory estoppel, and therefore, Plaintiffs affirmatively assert that such elements are satisfied.  Accordingly, Plaintiffs have stated a plausible claim for promissory estoppel and the Court should deny Defendants' Motion to Dismiss.

## <u>CONCLUSION</u>

For the foregoing reasons, and when the facts of the Complaint are accepted as true and viewed in light most favorable to Plaintiff, Plaintiff has stated claims against Defendants upon which relief can be granted.  Therefore, Defendants' Motion to Dismiss should be denied.

DATED this 14th day of October, 2011.

*Abraham Bates*

Abraham Bates
*Attorney for Plaintiffs*

25

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing **MEMORANDUM IN**

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** was transmitted *via* CM/ECF

Notice of Electronic Filing (NEF) on the 14th day of October, 2011 for service of process upon

the following parties or their counsels of record:

Philip D. Dracht, (11561)
FABIAN & CLENDENIN, PC
215 South State Street, Suite 1200
Salt Lake City, Utah 84111
Tel. (801) 596-8900
Fax (801) 531-1716
pdracht@fabianlaw.com
*Attorney for Defendants*

_____
Khalia Etuati
*Paralegal*