EXHIBIT C

No. 10-4117

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

PENI COX, an individual,

Plaintiff-Appellant,

v.

RECONTRUST COMPANY; BANK OF AMERICA HOME LOANS
SERVICING; BANK OF AMERICA; NEW LINE MORTGAGE, DIVISION
OF REPUBLIC MORTGAGE HOME LOANS; MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,

Defendants-Appellees.

On Appeal from an Interlocutory Order of the United States District
Court for the District of Utah, No. 2:10-CV-00492-CW-SA (Waddoups, J.)

**BRIEF OF AMICUS CURIAE STATE OF UTAH
IN SUPPORT OF APPELLANT AND REVERSAL**

Jerrold S. Jensen
Assistant Attorney General
MARK L. SHURTLEFF
Utah Attorney General
160 East 300 South, Fifth Floor
P. O. Box 140857
Salt Lake City, Utah 84114-0857
Telephone: (801) 366-0353
Attorneys for Amicus Curiae State of Utah

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTEREST OF AMICUS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.     THE NATIONAL BANK ACT APPLIES ONLY "WHEN NOT IN
       CONTRAVENTION OF STATE OR LOCAL LAW" . . . . . . . . . . . . . . 4

       A.    The U.S. Supreme Court Has Cited § 92a as an Example
             of the National Bank Act Subjecting National Banks to State Law.    4

       B.    Section 92a(a) and (b) of the National Bank Act. . . . . . . . . . . . . . . 5

       C.    The Meaning of Competitive Equality and Its Application to § 92a.   7

       D.    Where a Bank "Acts," Not Where the Bank is "Located," Determines
             Which State's Laws Apply . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

       E.    OCC Regulations Are Consistent with the OCC's Interpretive Letter
             No. 695 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

II.    APPLICATION OF SECTION 92a OF THE NATIONAL BANK
       ACT TO THE UTAH TRUSTEE STATUTES. . . . . . . . . . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

ADDENDA

ADDENDUM 1 - OCC Interpretive Letter  No. 695 entitled "Authority of a National Bank to Conduct Fiduciary Activities Nationwide Through Trust Offices in Various States."  1996 WL 187825

ADDENDUM 2 – Utah Code §§ 57-1-21(3), 57-1-23

## TABLE OF AUTHORITIES

Page

### CASES

*Barnett v. Nelson,* 517 U.S. 25 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Blaney v. Florida Nat'l Bank at Orlando,* 357 F.2d 27 (5TH Cir. 1966) . . . . . . . . 8

*Cuomo v. The Clearing House Association, L.L.C.,* 129 S.Ct. 2710 (2009) . . . . . 7

*First Nat'l Bank v. Dickinson,* 396 U.S.122 (1969) . . . . . . . . . . . . . . . . . . 7

*First Nat'l Bank of Logan v. Walker Bank and Trust Co.,* 385 U.S. 252 (1967) . . 7

*Kleinsmith v. Shurtleff,* 571 F.3d 1033 (10th Cir. 2009) . . . . . . . . . . . . . . . . . . . 3, 4

*New Hampshire Bankers Assn v. Nelson,* 460 F.2d 307 (1st Cir. 1972) . . . . . . . . 8

*Oklahoma v. Pope,* 516 F.3d 1214 (10th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . 2

*St. Louis County Nat'l Bank v. Mercantile Trust Co., N. A.,* 548 F.2d 716 (8th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

### CONSTITUTIONAL PROVISIONS, STATUTES, AND RULES

Utah Code § 57-1-21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Utah Code § 57-1-21(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 14

Utah Code § 57-1-23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 14, 15

12 C.F.R. § 9.7(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

12 U.S.C. § 92a . . . . . . . . . . . . . . . . . . . . . 4, 5, 6,7, 8, 9, 10, 11, 12, 13, 14, 15

12 U.S.C. § 92a(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 6, 10, 15

12 U.S.C. § 92(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 10, 15

28 U.S.C. § 2403(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

OCC Interpretive Letter  No. 695 . . . . . . . . . . . . . . . . . . . . . . 6, 9, 10, 11, 12, 13

## INTEREST OF AMICUS

The State of Utah has an interest in protecting the laws of the State in eliminating unlawful foreclosures, and in keeping its citizens in their homes. Because of companies like ReconTrust, the Utah Legislature has restricted who may conduct foreclosures of real estate trust deeds.  ReconTrust Co., N.A., is a non-depository national bank initiating approximately 4,000 home foreclosures in Utah each year,[1] in violation of Utah law.

Under Utah law, trustees of trust deeds with a "power of sale" must be members of the Utah State Bar or title insurance companies.  Utah Code §§ 57-1-21(3), 57-1-23.  (*See* Addendum 1.)  ReconTrust is neither.  It justifies its foreclosure actions in Utah by claiming that Utah's statute dealing with qualifications of trustees is preempted by the Supremacy Clause of the U.S. Constitution through the National Bank Act ("NBA").  And the District Court so held.

But the section of the NBA governing fiduciary activities of national banks specifically states that national banks may exercise fiduciary powers "when not in contravention of State or local law."  12 U.S.C. § 92a(a).  Clearly, the Supremacy

---

[1] Calculated based on number of properties ReconTrust lists on its website for Utah.  *See* http://www.recontrustco.com/upcoming_counties.aspx?state=Utah.

1

Clause of the U.S. Constitution does not preempt State law when Congress has explicitly stated that federal law is not to preempt State law.

Utah's sole interest in this appeal is the preemption of State law issue involving ReconTrust. Whether Judge Waddoups rightly or wrongly dissolved the State court preliminary injunction, whether he retains jurisdiction of the on-going case, etc., are not matters of concern to the State and will not be addressed herein.

Upholding Utah law is a matter of great concern to the State.

## BACKGROUND

Defendants-Appellees are asserting that the Supremacy Clause of the U.S. Constitution preempts the constitutionality of Utah law. As such the Attorney General of the State of Utah was entitled to receive notice of the challenge pursuant to 28 U.S.C. § 2403(b) and Federal Rules of Civil Procedure 5.1. No notice was provided to the Attorney General either by Defendants-Appellees or the District Court. As a result of not being notified, the State of Utah believes the matter should be remanded to the District Court to give the Attorney General of the State of Utah an opportunity to be heard on the matter, consistent with this Court's ruling in *Oklahoma v. Pope*, 516 F.3d 1214 (10th Cir. 2008).

It is important to understand the context in which Judge Waddoups issued the ruling that is being appealed here, and to understand the shortness of time

2

under which the events unfolded – which probably also explains why the Attorney

General of the State of Utah was never given notice.  Plaintiff below had obtained

a preliminary injunction in State court against ReconTrust conducting any

foreclosures in the State of Utah.  A Notice of Removal was filed with the District

Court on May 26, 2010.  Doc. 1.  A Motion to Vacate the Preliminary Injunction

was filed June 4, 2010.  Doc. 17.  A Motion for an Expedited Hearing was filed

June 6, 2010.  Doc. 23.  The hearing was held on June 10, 2010 and the Order

being appealed from here was issued June 11, 2010.  Given the shortness of time –

a total of one week from the time the Motion to Vacate was filed to an Order by

the Court – resulted in the issues involving preemption by the NBA being dealt

with in a very cursory fashion.

A history of the legislative amendments leading up to the current Utah

statute governing trustee qualifications can be found in *Kleinsmith v. Shurtleff*,

571 F.3d 1033, 1036-37 (10th Cir. 2009).  In short, beginning in 2001 the Utah

legislature enacted legislation to respond to a growing problem in the State.

Trustees, like ReconTrust, were sending Notices of Default and Trustee's Sale to

homeowners, stating that their mortgage is in default, and their home will be

auctioned for sale.  Like ReconTrust, these trustees would provide a telephone

number in their notices, but when called the number immediately went to a

3

recording with no opportunity for the homeowner to speak to a real person. To resolve this problem, the Utah legislature enacted a statute restricting the "power of sale" to trustees who are either members of the Utah State Bar or title insurance companies with either a place or office in the State. The purpose was to provide the homeowner with an opportunity to meet with the trustee face-to-face. It took three attempts by the legislature to get the matter right, but the final language – which is the current statute – was upheld by this Court in *Kleinsmith*. This Court said "[m]aking it easier for Utahns to meet with trustees, who play a pivotal role in nonjudicial foreclosures, is a legitimate State interest." *Id.* at 1048.

The issue presented here is not the same as that presented in *Kleinsmith*. But the observation by this Court that making it easier for citizens of the State to meet with a trustee foreclosing on their property is a "legitimate state interest" underlies the basic reason the State is adamant about upholding the Utah statute.

## ARGUMENT

I.   **THE NATIONAL BANK ACT APPLIES ONLY "WHEN NOT IN CONTRAVENTION OF STATE OR LOCAL LAW"**

A.   **The U.S. Supreme Court Has Cited § 92a as an Example of the National Bank Act Subjecting National Banks to State Law.**

In a recent case dealing with the preemption of State law by the National Bank Act, the U.S. Supreme Court cited 12 U.S.C. § 92a as an example in which

4

Congress has granted an "explicit power with an explicit statement that the exercise of that power is subject to State law." *Barnett v. Nelson*, 517 U.S. 25, 34 (1996). Two examples were cited: (1) branching, and (2) authorization of fiduciary powers. *Id.* at 34. Then, after citing cases that have allowed for State regulation of national banks -- without explicit language in the NBA authorizing such -- the Court said:

> [T]hese cases [do not] control the interpretation of federal banking statutes that accompany a grant of an explicit power with an explicit statement that the exercise of that power is subject to state law. See, *e.g.*, 12 U.S.C. § 36(c) (McFadden Act) (authorizing national banks to operate branches, but only where state law authorizes state banks to do so); § 92a(a) (Comptroller of Currency may grant fiduciary powers "by special permit to national banks applying therefor, when not in contravention of State of local law"). Not surprisingly, this Court has interpreted those explicit provisions to mean what they say.

*Id.* (Citations omitted.) Thus, the U.S. Supreme Court has specifically identified § 92a of the NBA as a section that grants national banks authority to exercise certain powers subject to State law.

**B.   Section 92a(a) and (b) of the National Bank Act.**

Section 92a(a) of the NBA reads:

> The Comptroller of the Currency shall be authorized and empowered to grant by special permit to national banks

5

> applying therefore, *when not in contravention of State or local law,* the right to act as trustee, executor, administrator, registrar of stocks and bonds, guardian of estates, assignee, receiver, committee of estates of lunatics, or in any other fiduciary capacity in which State banks, trust companies, or other corporations which come into competition with national banks are permitted to act under the laws of the State in which the national bank is located.

(Emphasis added.)  Section 92a(b) reiterates the same thing:

> Whenever the laws of such State authorize or permit the exercise of any or all of the foregoing powers by State banks, trust companies, or other corporations which compete with national banks, the granting to and the exercise of such powers by national banks *shall not be deemed to be in contravention of State or local law within the meaning of this section.*

(Emphasis added.)  The italicized portion of the above quoted statute is what the

Office of the Comptroller of the Currency ("OCC") calls the "state law condition."

OCC Interpretive Letter, No. 695, 1996 WL 187285 *2.  It is not exactly language

one would be citing for preemption -- and ReconTrust hasn't.  Though they make

numerous references to §92a(a) throughout their brief and quote portions of it

twice, Appellees' Br. at 34 & 39, they never set out the entirety of either § 92a(a)

and (b), and they never provide the Court with the actual language of the "state

law condition."  That language is, however, the critical language upon which the

entire issue of preemption of fiduciary powers of national banks pivots.

6

### C.   The Meaning of Competitive Equality and Its Application to § 92a.

ReconTrust persuaded the court below of the complete preemptive force of the NBA. But such a position is not consistent with 150 years of banking law in this country. As the Supreme Court recently noted, "[n]o one denies that the National Bank Act leaves in place some state substantive laws affecting banks." *Cuomo v. The Clearing House Association, L.L.C.*, 129 S.Ct. 2710, 2717-18 (2009). In what the courts call "competitive equality" State and national banks in certain specified areas are to compete on an equal basis. This is done by having both State and national banks being subject to the State law. As Chief Justice Warren Burger put it:

> The policy of competitive equality is . . . firmly embedded in the statutes governing the national banking system. The mechanism of referring to state law is simply one designed to implement that congressional intent and build into the federal statute a self-executing provision to accommodate to changes in state regulation.

*First Nat'l Bank v. Dickinson*, 396 U.S.122, 133 (1969). *See also First Nat'l Bank of Logan v. Walker Bank and Trust Co.*, 385 U.S. 252, 261 (1967).

Further, every court that has ruled on the application of State law to the fiduciary powers of national banks – except the ruling by the Utah federal district court on appeal here – has held that competitive equality applies to § 92a. The

7

Eighth Circuit noted "[t]he policy of competitive equality was incorporated into section 92a. . . . Therefore, to allow [a national bank] to accomplish what a state bank could not would frustrate the purpose of section 92a." *St. Louis County Nat'l Bank v. Mercantile Trust Co., N. A.*, 548 F.2d 716, 720 (8th Cir. 1976). And in *Blaney v. Florida National Bank at Orlando*, 357 F.2d 27, 30 (1966), the Fifth Circuit stated that it "is obvious from the most cursory reading of ... 12 U.S.C. § 92" that federal fiduciary law places "national banks on an equal competitive basis with state banks and trust companies in the state where the national bank is situated." *See also New Hampshire Bankers Assn v. Nelson*, 460 F.2d 307 (1st Cir. 1972).

**D.    Where a Bank "Acts," Not Where the Bank is "Located," Determines Which State's Laws Apply.**

ReconTrust takes the position that because it does not have a physical office or building in Utah it is not located in Utah and, therefore, Utah law does not apply to the foreclosures it conducts. Rather, it claims that the State laws that apply by virtue of § 92a are the laws of the State where the national bank is "located." Appellees' Br. at 34. Because ReconTrust is headquartered in California, ReconTrust claims California law applies to all its foreclosures.[2] In

---

[2]But its trust office doing foreclosures in Utah is located in Texas.

support of that position it cites several OCC Interpretative Letters which state that a national bank may "market" its product in States other than where it has a physical office, and such marketing does not require the national bank to comply with the State law of the State in which it is doing the marketing. Appellees Br. at 34-35, 40. The State of Utah takes no issue with the statement of law in the OCC Interpretive Letters cited by ReconTrust, but "fiduciary" activities are not the same as "marketing" activities, and the law governing such is not the same either.

The OCC Interpretive Letter ReconTrust should be citing is Interpretive Letter No. 695 entitled "Authority of a National Bank to Conduct Fiduciary Activities Nationwide Through Trust Offices in Various States." 1996 WL 187825. (See Addendum 2.) This letter addresses the issue of the application of State law to fiduciary powers of national banks operating in various States and specifically addresses the issue of where a bank is "located" for purposes of conducting fiduciary activities under § 92a of the NBA. The letter begins by saying:

> [I]n our opinion section 92a authorizes a national bank that has been granted fiduciary powers to exercise those powers in any state, provided that within each state, the state may bar the exercise of such fiduciary powers as the state also does not allow for its own state-chartered institutions. In essence, with respect to national bank fiduciary powers in a given state, we believe section 92a

9

> applies the same standards to all national banks, both
> those headquartered in that state and those that are "out-
> of-state banks" with respect to that state.

*Id.* at *1. The letter then cites § 92a(a) and (b) of the NBA as being the basic

authority for national banks to exercise fiduciary powers. *Id.* at *2-3. From there

it launches into a detailed discussion of the powers § 92a grants to national banks.

For example, it says that the NBA does not place *geographic* limits on where a

national bank may offer fiduciary services or have trust offices. *Id.* at *3. It also

states that a State may limit national banks from exercising any or all fiduciary

powers in that State if it also limits its own institutions from exercising those same

powers. Specifically, the letter says:

> Thus, the effect of section 92a is that in any specific
> state, the availability of fiduciary powers is the same for
> out-of-state national banks or for in-state national banks
> and is dependent upon what the state permits for its own
> state institutions. A state may limit national banks from
> exercising any or all fiduciary powers in that state, but
> only if it also bars its own institutions from exercising
> the same powers. Therefore, a national bank with its
> main office in one state may conduct fiduciary business
> in that state and other states, depending upon – with
> respect to each state – whether each state allows its own
> institutions to engage in fiduciary business.

*Id.* at *4. Following an historical analysis of § 92a, the letter discusses "The

Authority for a National Bank to Offer Fiduciary Services in a State Is the Same

Whether the Bank Is In-state or Out-of-state." *Id.* at *10.  In part, it states: "[I]n

our view, with respect to a national bank that proposes to offer fiduciary services

in more than one state, section 92a . . . does not imply that Congress intended that

the provisions of section 92a would apply only to one state for each national

bank." *Id.* at *12.  Rather, the OCC says the State in which the national bank is

operating is decided on a "state-by-state basis."  Specifically:

> [S]ection 92a authorizes national banks to offer fiduciary
> services in multiple states, but then conditions the exercise of
> that power with each state on a state-by-state basis under the
> same test: is the exercise of fiduciary powers by national banks
> prohibited by state law, and even if it is, does that state permit
> its state institutions to exercise these powers or not.

*Id.* at *12.  As if addressing the ReconTrust argument in the present case directly,

the OCC embarks on a detailed discussion of the meaning of the word "located" as

used in § 92a.  As the letter notes, the U.S. Supreme Court has said there is no

"enduring rigidity about the word 'located' as used in" the NBA. *Id.* at 13.  The

letter says::

> Other federal statutes also refer to the places where a
> national bank is "located," "situated," "existing," or of
> which it is a "citizen."  The United States Supreme Court
> has made clear that the locational language in these
> statutes should be flexibly construed, taking full account
> of changes in the banking system, to suit the underlying
> purposes of each provision, and has emphasized that
> "[t]here is no enduring rigidity about the word 'located'"

11

> as it is used in these provisions. *Citizens & Southern*
> *National Bank v. Bougas*, 434 U.S. at 44. Hence the
> Supreme Court, lower federal courts, and the OCC
> consistently have held that, for purposes of these
> statutes, a national bank is not located only in the place
> of its main office but can be "located," "situated" or
> "existing" in, or be a "citizen" of, multiple cities,
> counties, or states.

*Id.* at *13. (Citations omitted.) In the next paragraph, the letter states that a bank

is to be considered located in a State where it is "merely doing business -- and

treated under the statute in the same manner as any other national bank in the

state." *Id.* at *13. Certainly conducting 4,000 foreclosures a year in Utah would

qualify ReconTrust as "doing business" in the State, and hence subject it to the

State law applicable to both State and national banks.

In wrapping up Section I of Interpretive Letter 695, the OCC says that a

State has the authority to restrict national banks from exercising fiduciary powers

if it also restricts these powers for its own State institutions:

> Therefore, we conclude that section 92a authorizes a
> national bank that has been granted fiduciary powers to
> exercise those powers in any state, including having trust
> offices in any state, except that the bank may not offer
> such services in a state that prohibits it and in which the
> state does not authorize or permit its state banks, state
> trust companies or other corporations that compete with
> national banks to offer such services. An out-of-state
> national bank has the same authority under section 92a to
> offer fiduciary services in a state that in-state national

12

> banks have.  The state has the authority to restrict
> national banks from exercising these powers only if it
> restricts these powers for its own state institution. * * *
> Only state laws that bar any or all fiduciary activities to
> all corporate fiduciaries, in particular including the
> state's own state banks, state trust companies, and other
> corporations, can limit out-of-state national banks under
> section 92a.

*Id.* at *16.  So, rather than preempting State law, as ReconTrust contends, the OCC

clearly takes the position that a national bank's fiduciary powers are restricted in

the State in which it is "doing business" if that State also restricts the exercise of

those same powers to that State's own financial institutions.

### E.   OCC Regulations are Consistent with the OCC's Interpretive Letter No. 695.

ReconTrust also cites OCC regulations for the proposition that a trustee is

authorized to act in all fifty states in accord with the laws of the State where the

bank is "located" – meaning a physical office.  They cite 12 C.F.R. § 9.7(e) as

authority.  Appellees' Br. at 40.  But again, that is not what the regulation says,

and they do not quote it.  Section 9.7(e) uses the word "acts" for determining

where a bank is located, and hence which State's laws apply.  12 C.F.R. § 9.7(e)

states:

> (1) State laws used in section 92a.  The state laws that
> apply to a national bank's fiduciary activities by virtue of

13

> 12 U.S.C. 92a are the laws of the state in which the bank
> *acts* in a fiduciary capacity.
>
> (2) Other state laws. Except for the state laws made
> applicable to national banks by virtue of 12 U.S.C. 92a,
> state laws limiting or establishing preconditions on the
> exercise of fiduciary powers are not applicable to
> national banks.

(Emphasis supplied.) Thus, rather than the OCC regulations saying that the only

state laws that may be applied to fiduciary activities of a national bank are the

laws of the state where the national bank is physically located, Appellees' Br. at

39, the regulation actually says the State laws that apply to national banks are

those of the States where the bank "acts."[3] That is a far different criterion than

where the bank has a physical building.

## II.   APPLICATION OF SECTION 92a OF THE NATIONAL BANK ACT TO THE UTAH TRUSTEE STATUTES.

The Utah trustee qualification statute limits the trustees who have a power

of sale to foreclose a trust deed to members of the Utah State Bar and title

insurance companies with offices in the state. *See* Utah Code §§ 57-1-21(3), 57-1-

23. (Addendum 1.) Both State and national banks may be a trustee of a trust

---

[3]"State laws limiting or establishing preconditions," as used in § 9.7(e)(2), refers to laws other than those governing fiduciary duties under § 92a. Those laws would include such things as establishing a minimum net worth, who can be an officer of the bank, who may be on the bank's board of directors, etc. These preconditions are the exclusive province of the OCC.

deed, but neither possess the "power of sale" necessary to foreclose a trust deed. Thus, the Utah statute treats both State and national banks equally – achieving the desired goal of "competitive equality" – consistent with the State law condition of § 92a.

## CONCLUSION

The grant of an explicit power by Congress to national banks to exercise fiduciary powers is also accompanied by an explicit statement that those powers are subject to State law.  12 U.S.C. § 92a(a) and (b).  As a result, this Court should hold that § 92a of the National Bank Act does not preempt Utah's law governing trustee qualifications, Utah Code §§ 57-1-21 and 57-1-23, and that ReconTrust is not a qualified trustee for purposes of conducting trustee foreclosures in Utah.

Dated this ___16th___ day of February, 2011.

/s/Jerrold S. Jensen
Jerrold S. Jensen
Assistant Attorney General
Attorney for Amicus Curiae