IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

* * * * * * * * *

| | | |
|---|---|---|
| TIMOTHY R. BELL, an individual; and JENNIFER BELL, an individual, | ) ) ) | Civil No. 2:11-CV-00271-BSJ |
| Plaintiffs, | ) ) | **MEMORANDUM OPINION & ORDER** |
| vs. | ) ) | **(Fed. R. Civ P. 12(b)(6))** |
| COUNTRYWIDE BANK, N.A. d/b/a BANK OF AMERICA CORPORATION, a Delaware corporation; BAC HOME LOANS SERVICING, LP, a Texas limited partnership; RECONTRUST COMPANY, N.A., a national association; and DOES 1-5, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

```
┌─────────────────────────────────┐
│             FILED               │
│   CLERK, U.S. DISTRICT COURT    │
│   March 15, 2012 (2:04pm)       │
│       DISTRICT OF UTAH          │
└─────────────────────────────────┘
```

* * * * * * * * *

## I. INTRODUCTION

This matter arises out of plaintiffs' alleged default on a promissory note secured by a deed of trust on their primary residence. On October 8, 2009, defendant ReconTrust, a successor trustee, recorded with the Salt Lake County Recorder a notice of default and election to sell plaintiffs' property to collect on the note.[1] Plaintiffs filed a complaint challenging the prospective sale in Third District Court, Salt Lake County, Utah. Defendants subsequently removed the case to this court, alleging diversity.

At a hearing on August 30, 2011, plaintiffs represented that they "would like to bring an amended complaint seeking judicial determination about the right of ReconTrust [the successor

---

[1](*See* Pls.' Third Am. Compl., filed Sept. 15, 2011 (dkt. no. 68) ("Pls.' Compl."), at Ex. C.)

trustee] to foreclose this trust deed."[2] Plaintiffs also requested leave to amend the complaint to state a cause of action for promissory estoppel on the loan modification issues.[3] At that time, plaintiffs stated that "as to those two items, we'd like the Court's leave to file an amended complaint and continue on our way."[4] The court granted leave to amend,[5] ordering that plaintiffs file their amended complaint by September 16, 2011.[6]

Plaintiffs filed an amended complaint on September 15, 2011,[7] which asserted the following among other things: (1) absence of authority of ReconTrust and "preliminary injunction" (as against all defendants), (2) breach of an alleged modified contract (as against BAC and BAC Servicing), and (3) promissory estoppel (as against BAC and BAC Servicing).

On September 30, 2011, defendants filed a Rule 12(b)(6) motion to dismiss for failure to state a claim,[8] arguing that the complaint exceeded the authorization to amend. Although defendants assert that plaintiffs' claim for preliminary injunction "is not a claim at all but rather a

---

[2](Transcript of Hearing, dated Aug. 30, 2011 (dkt. no. 77) ("Mot. Amend Hr'g Tr."), at 5:7–9; *see also id.* at 6:11–13.)

[3](*Id.* at 5:19–22.)

[4](*Id.* at 5:23–24.)

[5](*Id.* at 22:19–20.)

[6](*See id.* at 23:17–24:9; Order, filed September 21, 2011 (dkt no. 69).)

[7](*See* Pls.' Compl.) Plaintiffs titled the amended complaint as "Third Amended Complaint" when in fact it should have been titled "Second Amended Complaint." Although on May 31, 2011 plaintiffs filed a motion to amend/correct their first amended complaint (dkt. no. 36),—and filed concurrently therewith a *proposed* second amended complaint (dkt. no. 38)—the court never granted that motion to amend. Accordingly, the proposed second amended complaint was never operative, and what plaintiffs have titled as the "Third Amended Complaint" is actually the "Second Amended Complaint."

[8](*See* Defs.' Mot. Dismiss Pls.' Third Am. Compl., filed Sept. 30, 2011 (dkt. no. 70) ("Defs.' Mot. Dismiss").)

2

form of relief that cannot constitute an independent cause of action,"[9] paragraphs 52–56 of the amended pleading adequately raise the question as to whether ReconTrust has authority to conduct nonjudicial foreclosures on real property in Utah.

The question is of continuing importance because Utah Code Ann. § 57-1-23.5(2) (Supp. 2011)[10] provides a private cause of action to a trustor whose real property has been the subject of an unauthorized sale by an unauthorized person. Plaintiffs assert ReconTrust is unauthorized to "foreclose."

Defendants may have a point that plaintiffs may have exceeded the scope of the court's leave to amend,[11] but the court need not address the promissory estoppel claim nor the breach of contract issue at this time. The immediate and substantive question before the court is whether ReconTrust has authority to sell real property at a nonjudicial foreclosure sale in Utah.

On November 10, 2011, defendants' motion came on for hearing and was argued to the court, at which time the court reserved on the matter and requested supplemental briefing from both parties as to the legislative history of 12 U.S.C. § 92a. Curiously, at the hearing, defendants notified the court for the first time that on November 2, 2011, ReconTrust had been succeeded as trustee by an attorney named Armand J. Howell.[12] Defendants then asserted that plaintiffs' claim

---

[9](*See* Defs.' Mem. Supp. Mot. Dismiss Pls.' Third Am. Compl. (dkt. no. 71) ("Defs.' Mem."), at 2.)

[10]Subsection (2)(a) states that "[a]n authorized person who conducts an unauthorized sale is liable to the trustor for the actual damages suffered by the trustor as a result of the unauthorized sale or $2,000, whichever is greater."

[11](*See* Defs.' Mem. at 5–6.)

[12](Transcript of Hearing, dated Nov. 10, 2011 (dkt. no. 80) ("Mot. Dismiss Hr'g Tr."), at 7:16–8:5, 33:17–19.)

as to ReconTrust had become moot.[13] In light of Mr. Howell's recent appointment as successor

trustee, the court also requested the parties to brief whether the ReconTrust issue was capable of

repetition.[14]

## II. DISCUSSION

At this point, the court need only determine whether to grant or deny defendants' motion

to dismiss.

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do."[15] While "the pleading standard Rule 8 announces does not require detailed

factual allegations, . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-

me accusation."[16]

Prior to dealing with the substantive question, the court must first determine whether

plaintiffs' claim is now moot.

### A. Plaintiffs' claim against ReconTrust is not moot

This court's jurisdiction and constitutional authority under Article III of the Constitution

do not extend to moot cases, but only to actual cases or controversies.[17] The mootness doctrine is

---

[13](*Id.* at 33:12–16.)

[14](*Id.* at 72:22–73:3.)

[15]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted).

[16]*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotations omitted).

[17]*Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983).

grounded in the idea that "'federal courts only decide actual, ongoing cases or controversies,'"[18] and that "a case or controversy no longer exists when it is impossible to grant any effectual relief."[19]

However, a case is not moot if it "falls within a special category of disputes that are 'capable of repetition' while 'evading review.'"[20] Two elements must be present for a case to fall within this exception: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again."[21]

The Supreme Court has stated that a federal court's "concern in these cases, as in all others involving potentially moot claims, [is] whether the controversy [is] *capable* of repetition and not . . . whether the claimant ha[s] demonstrated that a recurrence of the dispute was more probable than not."[22] Indeed, the possibility of recurrence need not be "established with mathematical precision," but rather the court need only find a "reasonable expectation" of repetition.[23] Certainly, the bar is not high for a party to withstand a challenge for mootness.

_____

[18]*Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239, 1242 (10th Cir. 2011) (quoting *Building & Constr. Dep't v. Rockwell Int'l Corp.*, 7 F.3d 1487, 1491 (10th Cir. 1993)); *see also* Matthew I. Hall, *The Partially Prudential Doctrine of Mootness*, 77 Geo. Wash. L. Rev. 562, 571 (2009).

[19]*Chihuahuan Grasslands Alliance v. Kempthorne*, 545 F.3d 884, 891 (10th Cir. 2008).

[20]*Turner v. Rogers*, 131 S. Ct. 2507, 2514–15 (2011) (quoting *S. Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911)).

[21]*Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (per curiam).

[22]*Honig v. Doe*, 484 U.S. 305, 319 n.6 (1988) (emphasis in original).

[23]*Id.*

When presented with a question of mootness the court also has an "interest in 'preventing litigants from attempting to manipulate the Court's jurisdiction.'"[24] "The concern is that a party's change in position may be temporary and thus abandoned once the litigation ends."[25] Therefore, it is "well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice."[26] In cases where the court is concerned with a party's potential manipulation of the court's jurisdiction, the Tenth Circuit looks at two additional factors: (1) whether "it is not 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur[,]'"[27] and (2) whether the litigant is attempting to seal a favorable decision from review.[28]

Additionally, there are certain matters that come before a court that are too important to be denied effective review; for example, when the nature of the issue is sufficiently compelling in relation to the enforcement of the laws and the private rights involved.[29]

---

[24]*Wyoming v. U.S. Dep't of Agric.*, 414 F.3d 1207, 1212 (10th Cir. 2005) (quoting *City of Erie v. PAP'S A.M.*, 529 U.S. 277, 288 (2000)).

[25]*Id.*

[26]*City of Mesquite v. Alladin's Castle, Inc.*, 455 U.S. 283, 289 (1982). In *Alladin's Castle*, a city exempted a business from a city ordinance in response to the business' challenge that the ordinance was unconstitutional. However, after a state court decision was issued regarding the matter, the city adopted a new ordinance which repealed the business exemption. *See id.* at 286–87, 289.

[27]*Seneca-Cayuga Tribe of Okla. v. Nat'l Indian Gaming Comm'n*, 327 F.3d 1019, 1028 (10th Cir. 2003) (quoting *S. Utah Wilderness Alliance v. Norton*, 301 F.3d 1217, 1236 n.17 (10th Cir. 2002)).

[28]*See Seneca-Cayuga Tribe*, 327 F.3d at 1029 ("We, however, read *City of Erie* as expressing a generalized concern about manipulation of an appellate court's jurisdiction to seal a favorable decision from review. Here, appellees' conduct, while presumably not in bad faith, nonetheless implicates the concern over post-trial manipulation.").

[29]*Cf. In re Carlson*, 580 F.2d 1365, 1372 (10th Cir. 1978) (deciding to entertain the issue
(continued...)

6

Here, defendants assert that "Plaintiffs cannot allege a live case or controversy vis-à-vis ReconTrust and this Court cannot grant Plaintiffs any effectual relief as to the preliminary injunction claim"[30] because ReconTrust is no longer the trustee on the plaintiffs' deed of trust, and "in fact, ReconTrust ceased operations in Utah in October 2011."[31]

This court disagrees. The question of mootness arose on November 2, 2011, when defendants substituted a licensed Utah attorney as trustee in the place of ReconTrust. However, plaintiffs and others are certainly capable of being subjected to ReconTrust's actions once again. Plaintiffs correctly assert that the "beneficiary may appoint a successor trustee *at any time*,"[32] meaning that there is nothing prohibiting defendants from again substituting ReconTrust as successor trustee at a later date.

Although defendants represent that ReconTrust ceased operations in Utah in October 2011, they have supplied this court with one order and one memorandum decision and order from cases in the District of Utah wherein ReconTrust continued to prosecute actions against Utah homeowners as late as December 2011 and February 2012.[33] There was no specific representation that ReconTrust would comply with the Utah statutes in the future. It is of course

---

[29](...continued)
as to whether the district court's judgment denying the IRS application was a final decision even though the petitioner's business successor-in-interest had already voluntarily paid all the taxes, penalties, and interest of taxpayer Carlson).

[30](Defs.' Supplemental Mem. Supp. Mot. Dismiss, filed Dec. 1, 2011 ("Defs.' Supplemental Mem.") (dkt. no. 83), at 8.)

[31](*Id.*)

[32]Utah Code Ann. § 57-1-22(1)(a) (2010) (emphasis added).

[33]*Dutcher v. Matheson*, 2:11-CV-666-TS (D. Utah Feb. 8, 2012) (Mem. Opinion & Order, dkt. no. 48); *see also Garrett v. ReconTrust Co., N.A.*, 2:11-CV-00763-DS (D. Utah Dec. 21, 2011) (Order, dkt. no. 9).

curious that ReconTrust later provided to the court supplemental authority and further argued that ReconTrust did not have to comply with the Utah statutes. Thus, it is not absolutely clear to this court that ReconTrust's future compliance with Utah statutes can reasonably be expected.

ReconTrust relies on two decisions which apply Texas law to a national bank's fiduciary activities in Utah.[34] The cases on this issue within the District of Utah are evenly split.[35] One of them was appealed.[36] The Tenth Circuit did not have opportunity to pass on the matter because the plaintiff voluntarily dismissed her complaint in the underlying action prior to the Tenth Circuit having opportunity to issue an opinion.[37]

The substitution of an attorney as successor trustee occurred on November 2, 2011. The hearing on the motion to dismiss was set for November 10, 2011. Despite having eight days (four days, not including weekends and the dates of substitution and hearing) to notify the court of the substitution—and possibly submit a supplemental brief as to the potential mootness

---

[34]*Dutcher v. Matheson*, 2:11-CV-666-TS (D. Utah Feb. 8, 2012) (Mem. Opinion & Order, dkt. no. 48); *see also Garrett v. ReconTrust Co., N.A.*, 2:11-CV-00763-DS (D. Utah Dec. 21, 2011) (Order, dkt. no. 9).

[35]Just as there are two District of Utah cases that apply Texas law to ReconTrust's foreclosure operations in Utah, *see* cases cited *supra* note 34, there are also two District of Utah cases that apply Utah law on the same issue. *See Cox v. ReconTrust Co.,* No. 2:10-CV-492-CW, 2011 WL 835893, at *6 (D. Utah March 3, 2011) (holding that Utah law applies to ReconTrust's foreclosure activities within the State of Utah); *see also Coleman v. ReconTrust Co.*, No. 2:10-CV-1099 (D. Utah Oct. 3, 2011) (Order Granting in Part and Denying in Part Motion to Dismiss, dkt. no. 87, at 2) (same).

[36]*See Cox v. ReconTrust Co.,* No. 2:10-CV-492-CW (D. Utah June 25, 2010) (Notice of Appeal of Interlocutory Decision, dkt. no. 47).

[37]*See Cox v. ReconTrust Co., N.A.*,  No. 10-4117, Order at 2 (10th Cir. Aug. 18, 2011).

8

issue—defendants did not notify the court of the substitution until the November 10, 2011

hearing was well underway and 245[38] days after the case was commenced.[39]

The parties have raised a compelling question. Further, the private rights of many Utah

citizens are potentially involved. The matter is too important to be denied effective review.

**B. ReconTrust is not authorized to exercise a power of sale in a non-judicial foreclosure action within the State of Utah**

Utah statutes require banks—including Utah-chartered banks—to foreclose trust deeds

only through identified trustees. The question for decision is direct: Does ReconTrust, a Texas

corporation, and by definition a "national bank"—although it neither takes deposits nor makes

loans—have the power to conduct non-judicial foreclosures in Utah of trust deeds on real

property located in Utah without complying with Utah statutes? The direct answer is no. It does

not have such power.

---

[38]Plaintiffs filed their complaint in Third District Court, Salt Lake County, Utah on March 11, 2011.

[39](*See* Mot. Dismiss Hr'g Tr. at 7:16–24, 33:12–23):
MS. MILLER: In any event, a new substitution of trustee has been made since that time identifying another trustee. . . .
THE COURT: When was that done?
MS. MILLER: That was done in November of 2011.
THE COURT: Just a day or two ago.
MS. MILLER: A week or two ago, yes.
. . . .
MS. MILLER: We'd also like to point out that there is no immediate or irreparable injury in this case. ReconTrust is not even the appointed substitute trustee anymore, as we pointed out earlier, so the issue is moot—
THE COURT: Why so fast? I notice that you did that on the 2d of November.
MS. MILLER: Yes.
THE COURT: Okay.
MS. MILLER: Yes. The old notice was stale. We would not have been able to act on the old notice. And so a new notice was issued.

A state bank which seeks to foreclose on real property in Utah must comply with Utah law. A federally chartered "bank" which seeks to foreclose on such property must comply with Utah law as well. The reason is found within the federal statutes, the history of federal legislation, as well as principles of Federalism.

Defendants—and the court decisions to which they cite[40]—rely heavily on 12 C.F.R. § 9.7(d) (2011), a final interpretive rule issued by the Office of the Comptroller of the Currency ("the Comptroller") which interprets the governing federal statute, 12 U.S.C.A. § 92a (2001). However, none of the decisions to which defendants cite—nor any that this court has examined—have questioned whether the Comptroller's interpretation deserves deference.[41]

In determining whether the court should give such deference to the Comptroller's interpretation of § 92a of the National Bank Act the court applies the *Chevron* test, which states that

> [w]hen a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the

---

[40]*Dutcher v. Matheson*, 2:11-CV-666-TS (D. Utah Feb. 8, 2012) (Mem. Opinion & Order, dkt. no. 48); *see also Garrett v. ReconTrust Co., N.A.*, 2:11-CV-00763-DS (D. Utah Dec. 21, 2011) (Order, dkt. no. 9). Both the preceding cases held that Texas law applies to ReconTrust's foreclosure activities in Utah. *But see Cox v. ReconTrust Co.,* No. 2:10-CV-492-CW, 2011 WL 835893, at *6 (D. Utah March 3, 2011) (holding that Utah law applies to ReconTrust's foreclosure activities within the State of Utah); *see also Coleman v. ReconTrust Co.*, No. 2:10-CV-1099 (D. Utah Oct. 3, 2011) (Order Granting in Part and Denying in Part Motion to Dismiss, dkt. no. 87, at 2) (same).

[41] *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984).

question for the court is whether the agency's answer is based on a permissible construction of the statute.[42]

In a more recent case, the Supreme Court has stated that "[u]nder the familiar *Chevron* framework, we defer to an agency's *reasonable* interpretation of a statute it is charged with administering."[43]

Accordingly, in determining whether the Comptroller's opinion deserves deference, the court first looks to whether Congress has addressed the precise question at issue, and if Congress has not, the court will then determine whether the Comptroller's interpretation is based on a permissible construction of the statute, i.e., whether the interpretation is reasonable.

**1. The interplay between 12 U.S.C. § 92a and 12 C.F.R. § 9.7(d)**

ReconTrust is chartered as a "national bank," and is governed by the National Bank Act, 12 U.S.C. § 1 *et seq.* As part of the National Bank Act, 12 U.S.C. § 92a specifically discusses a national bank's power to act as trustee. Because the Comptroller's final rule purports to interpret 12 U.S.C. § 92a, this court's starting point is the plain language of the statute itself. Pertinent also is the intent of Congress as reflected in the language of the statute and its legislative history.

The statute states:

**(a) Authority of Comptroller of the Currency**

The Comptroller of the Currency shall be authorized and empowered to grant by special permit to national banks applying therefor, *when not in contravention of State or local law*, the right to act as trustee, executor, administrator, registrar of stocks and bonds, guardian of estates, assignee, receiver, committee of estates of lunatics, or in any other fiduciary capacity in which State banks, trust companies, or other corporations which come into competition with national banks are permitted to act under the laws of the State in which the national bank is located.

**(b) Grant and exercise of powers deemed not in contravention of State or local law**

---

[42]*Id.* at 842–43.

[43]*Cuomo v. Clearing House Ass'n*, 129 S. Ct. 2710, 2715 (2009) (emphasis added).

Whenever the laws of such State authorize or permit the exercise of any or all of the foregoing powers by State banks, trust companies, or other corporations which compete with national banks, the granting to and the exercise of such powers by national banks shall not be deemed to be in contravention of State or local law within the meaning of this section.[44]

Congress has spoken directly to this issue: the "State" referenced in § 92a refers, *inter alia*, to the State where the trust activity occurs—Utah in this case. The statute is clear. However, even if the statute is not clear and demands interpretation, this Court concludes that the Comptroller's interpretation in 12 C.F.R. § 9.7(d) modifies the statute and is unreasonable—if not irrational—and therefore, does not deserve deference. ReconTrust must comply with Utah law when engaging in trust activities within the State of Utah, which includes trust deed foreclosures. This court further concludes that ReconTrust, by definition a national bank, competes with banks, not title insurance companies. Rather, the Utah Legislature intended that title insurance companies and national or state-chartered banks work in concert with each other when conducting non-judicial foreclosures within the State of Utah.

Defendants argue that § 92a must be read in conjunction with 12 C.F.R. § 9.7(d) (2011), which states that

[f]or each fiduciary relationship, the state referred to in section 92a is the state in which the bank acts in a fiduciary capacity for that relationship. A national bank acts in a fiduciary capacity in the state in which it accepts the fiduciary appointment, executes the documents that create the fiduciary relationship, and makes discretionary decisions regarding the investment or distribution of fiduciary assets. If these activities take place in more than one state, then the state in which the bank acts in a fiduciary capacity for section 92a purposes is the state that the bank designates from among those states.[45]

---

[44]12 U.S.C.A. § 92a(a)–(b) (2001) (emphasis added).

[45]12 C.F.R. § 9.7(d) (2011).

Defendants assert that when read in conjunction with 12 C.F.R. § 9.7(d), the "State or local law" referred to in 12 U.S.C. § 92a(a) is clearly Texas law—as opposed to Utah law—because ReconTrust accepts fiduciary appointment, executes the documents that create the fiduciary relationship, and makes discretionary decisions regarding the investment or distribution of fiduciary assets in Texas. Defendants have called the court's attention to two recent decisions—both within the District of Utah—which arrive at this conclusion, relying on 12 C.F.R. § 9.7(d).[46] Although aware of these decisions, this court sees the issue differently.

Texas law allows national banks to act as trustee under deeds of trust, and to exercise the power of sale with regard to such deeds of trust in Texas.[47] Utah law does not.[48] Because Texas law allows its own state-chartered banks to exercise the power of sale in foreclosure actions in Texas, pursuant to 12 U.S.C. § 92a, national banks are also allowed to exercise the power of sale within Texas. However, because Utah law does not allow Utah state-chartered banks to exercise the power of sale in foreclosure actions, plaintiffs argue that § 92a's contravention clause ("when not in contravention of State or local law") also prohibits national banks from exercising the power of sale in Utah.

The threshold issue is whether the court should give credence to 12 C.F.R. § 9.7(d)'s reading of 12 U.S.C. § 92a, as the defendants insist.

---

[46]*Dutcher v. Matheson*, 2:11-CV-666-TS (D. Utah Feb. 8, 2012) (Mem. Decision & Order, dkt. no. 48, at 11 n.25); *see also Garrett v. ReconTrust Co., N.A.*, 2:11-CV-00763-DS (D. Utah Dec. 21, 2011) (Order, dkt. no. 9, at 3).

[47]*See* Tex. Fin. Code Ann. §§ 32.001, 182.001; *see also* Tex. Prop. Code Ann. §§ 51.0001, 51.0074.

[48]*See* Utah Code Ann. §§ 57-1-23, 57-1-21 (2010) (allowing only an active member of the Utah State Bar or a title insurance company to exercise the power of sale).

13

*(a) Whether Congress has directly spoken to the precise question at issue*

The precise question at issue is this: to which "State(s)" does 12 U.S.C. § 92a(a) refer? After carefully examining the statute's plain meaning, together with the legislative history of the statute, the court has determined that Congress has directly addressed this precise question.

The court begins its analysis by looking to the plain meaning of the statute.[49] "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."[50] 12 U.S.C. § 92a(a) sets forth the Comptroller's authority to grant national banks the power to act as trustee "when not in contravention of State or local law." The State law to which § 92a(a) refers is the law "of the State in which the national bank is located."[51] Subsection (b) further states that "whenever the laws of such State authorize" State banks to act as trustee, the granting of such trustee powers to national banks "shall not be deemed to be in contravention of State or local law."[52]

The statute's plain meaning indicates that the national bank is "located" in each state in which it carries on activities as trustee.

The Comptroller's rule—without providing reasons therefor—limits its interpretation of the location where a national bank acts as trustee to the State in which the bank performs its

---

[49]*Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) ("Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. Our inquiry must cease if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240 (1989))).

[50]*Robinson*, 519 U.S. at 341.

[51]12 U.S.C.A. § 92a(a) (2001).

[52]*Id.* § 92a(b).

"core fiduciary functions."[53] The Comptroller has interpreted "core fiduciary functions" to mean "accept[ing] the fiduciary appointment, execut[ing] the documents that create the fiduciary relationship, and mak[ing] discretionary decisions regarding the investment or distribution of fiduciary assets."[54] Notably, the Comptroller failed to include as a core fiduciary function engaging in an act which liquidates the trust assets, e.g., engaging in a non-judicial foreclosure of real property where the trust asset is located. This makes no sense

Such an artificial exclusion contravenes the plain meaning of the statute. When acting as a trustee of a trust deed, one necessarily acts in the capacity as trustee in the State where the real property is located, where notice of default is filed, and where the sale is conducted. In this case, ReconTrust is acting as trustee of a trust deed for real property in the State of Utah. ReconTrust, as trustee, filed a notice of default and election to foreclose on real property within the State of Utah.

The notice is filed in Utah. The sale is conducted in Utah, often on the steps of the local county courthouse. Those acts do not occur in Texas. Those acts may not be performed by Utah-chartered banks. Thus, those acts may not be performed by national banks in Utah. That dual system, it seems to me, is Federalism at its most elementary.

Other courts have also reached this conclusion. In *Cox v. ReconTrust Co., N.A.*,[55] the court stated that it was not convinced by

---

[53]*See* Interpretive Letter No. 866, 1999 WL 983923, at Part II.B. (October 8, 1999).

[54]12 C.F.R. § 9.7(d) (2011); *see also* Interpretive Letter No. 866, 1999 WL 983923, at Part II.B. (adopted in substance by 12 C.F.R. § 9.7(d)).

[55]No. 2:10-CV-492 CW, 2011 WL 835893, at *6 (D. Utah March 3, 2011). Plaintiff voluntarily dismissed the underlying district court action while the foregoing case was on appeal before the Tenth Circuit. Thus, the Tenth Circuit found that the appeal was rendered moot. *Cox v. ReconTrust Co., N.A.*,  No. 10-4117, Order at 2 (10th Cir. Aug. 18, 2011). Currently, this case and the companion Utah cases all are a form of repetition.

ReconTrust's argument that § 92a(b) dictates that the court look to some state law other than Utah state law to evaluate ReconTrust's foreclosure activities in Utah. . . . Here, . . . ReconTrust is conducting foreclosure activities on behalf of Bank of America in several states, including Utah. . . .

      Under a straight forward reading of § 92a(b), this court must look to Utah law in its analysis of whether ReconTrust's activities in Utah exceed ReconTrust's trustee powers. The powers granted to ReconTrust under federal law in this case are limited by the powers granted by Utah state law to ReconTrust's competitors. Accordingly, the extent of ReconTrust's federal powers must be determined by reference to the laws of Utah, not by reference to the laws of some other state. Under Utah law, the power to conduct non-judicial foreclosure is limited to attorneys and title companies. The scope of the powers granted by federal law is limited to the same power Utah statute confers on ReconTrust's Utah competitors. . . .[56]

The legislative history of 12 U.S.C. § 92a demonstrates that Utah law should apply.

The phrase, "when not in contravention of State or local law" originated with § 11(k) of the Federal Reserve Act of 1913.[57] Although legislative history does not exist as to the precise meaning of the phrase in § 11(k), a nearly identical phrase was used in § 8 of the same Act. Section 8 provided a means by which state banks could convert to national banks. However, the section placed a condition on state banks that desired to convert to national banks: "*Provided, however,* That said conversion shall not be in contravention of the State law."[58] When the bill which eventually became the Federal Reserve Act of 1913 was introduced on the floor of the Senate on December 1, 1913, § 8 also contained the word "local" so as to read, "*Provided,*

---

[56]*Id.*; *see also Coleman v. ReconTrust Co.*, No. 2:10-CV-1099 (D. Utah Oct. 3, 2011) (Order Granting in Part and Denying in Part Motion to Dismiss, dkt. no. 87, at 2) ("[T]he court agrees with the reasoning applied in *Cox v. ReconTrust Company, N.A.*, 2011 WL 835893 (March 3, 2011 D. Utah).").

[57]Federal Reserve Act of 1913, Dec. 23, 1913, ch. 6 § 11(k), 38 Stat. 262. At the time of its passage, section 11(k) stated that "[t]he Federal Reserve Board shall be authorized and empowered To grant by special permit to national banks applying therefor, when not in contravention of State or local law, the right to act as trustee, executor, administrator, or registrar of stocks and bonds under such rules and regulations as the said board may prescribe."

[58]*Id.* § 8, 38 Stat. 258.

*however*, That said acts are not in contravention of the State or local law."[59] That wording of § 8

is almost identical to the language found in § 11(k) that now exists as 12 U.S.C. § 92a(a).

Dialogue as to the purpose of this language that occurred on the floor of the Senate on

December 15, 1913 proves instructive:

> MR. BURTON: On page 28, lines 6 and 7, there is this proviso: *Provided, however*, That said acts are not in contravention of the State or local law.
>
> Why should this reservation appear in the preceding section and not in section 9? The preceding section pertains to a change in the form of organization from a State bank to a national bank, while this section, as I have already said, relates to membership by a State bank in this new system. Why is not a reservation of that kind equally as necessary in this section as in the preceding section?
>
> MR. OWEN: Mr. President, I will reply to the Senator that, in my judgment, it is not necessary in the preceding section.
>
> MR. BURTON: That is, it goes without saying?
>
> MR. OWEN: It is merely put in as a courteous observation. In reality I do not think it is actually necessary, because no State bank having its charter under a State law could violate the law of its own being. *It was thought well, however, to put it in to show that there was no purpose on the part of Congress to disregard the local State law, but merely to give its assent provided the State law permitted it to be done.*[60]

Senator Owen's[61] response is a clear indication that Congress did not intend to disregard

or contravene *local* State law when giving state banks the opportunity to convert to national

banks. That is to say, if State law prohibited a state bank from converting to a national bank, the

---

[59]51 Cong. Rec. S23 (December 1, 1913) (statement of Sen. Owen).

[60]51 Cong. Rec. S879 (December 15, 1913) (statements of Sens. Owen & Burton) (emphasis added).

[61]Senator Owen was the Senate's principal sponsor of the Federal Reserve Act of 1913.

Federal Reserve Act would not contravene that State's law, and the state bank would not be able to convert to a national bank.

In light of the near-identical nature of the phrases in §§ 8 and 11(k), it seems clear that Congress intended to preclude any inference that a national bank may disregard local State law in performing its duties as trustee. A contrary interpretation draws precisely that inference and effectively preempts the laws of the local State (presumably the State where the foreclosed property is located and the trustee executes the power of sale) in favor of the laws of another State (the State where the national bank performs its "core fiduciary functions"); this is essentially the effect of the Comptroller's final rule.

Shortly after the enactment of the Federal Reserve Act of 1913, the Supreme Court had opportunity to interpret § 11(k) when the Michigan Supreme Court upheld a state law that prohibited national banks from exercising trust powers within Michigan.[62] Interestingly, the laws of Michigan allowed state banks to exercise trust powers;[63] thus the effect of the Michigan law was to discriminate against national banks. The Supreme Court reversed the decision of the Michigan Supreme Court,[64] holding that if State law allows a state bank to conduct certain business, the State must also allow a national bank to conduct that same business so long as the Federal Reserve Board grants the national bank permission to do so.[65]

---

[62] *First Nat'l Bank of Bay City v. Fellows*, 244 U.S. 416, 421–22 (1917).

[63] *Id.* at 421.

[64] *Id.* at 423–24.

[65] *Id.* at 426.

The next year, Congress successfully codified the Supreme Court's holding in *Fellows* by passing H.R. 11283,[66] which in present-day form comprises the latter-half of subsection 92a(a) and the entirety of subsection (b). Prior to the passage of H.R. 11283, the House Committee on Banking and Currency's report regarding the bill stated that

> [u]nder a recent decision of the United States Supreme Court it is clearly settled that Congress has the power to confer authority upon national banks to act in these fiduciary capacities, where such powers are exercised by trust companies, State banks, or other competing corporations, even though the State law discriminates against national banks in this regard. The terms of section 11(k) are extended, therefore, to permit such powers to be granted to national banks in those States in which the State law discriminates against national banks in this respect.[67]

Congress thus intended to create an equal playing field for national banks, and was wary of any potential competitive advantage afforded to State institutions by State law.

Decades later, through the passage of the National Bank Act of 1962, Congress removed the power originally vested in the Federal Reserve Board under § 11(k) and transferred it to the Comptroller of the Currency.[68] This Act of Congress effectively repealed[69] the language of § 11(k) of the Federal Reserve Act and reenacted it as 12 U.S.C. § 92a(a)–(b). On September 13, 1962, the Senate Committee on Banking and Currency issued Senate Report No. 2039, urging the

---

[66]Act of Sept. 26, 1918, ch. 177, 40 Stat. 967, 968–69 (1918).

[67]H.R. Rep. No. 65-479, *reprinted in* U.S. Serial Set vol. 7307 (1918).

[68]National Bank Act of 1962, Pub. L. No. 87-722, 76 Stat. 668 (enacting H.R.12577).

[69]"Subsection (k) of section 11 of the Federal Reserve Act . . . is repealed by [H.R. 12577] in a purely technical sense only. In effect, the provisions of that subsection become the first section of the bill, with the Comptroller of the Currency being substituted for the Board of Governors of the Federal Reserve System as the responsible administrative agency." H.R. Rep. No. 87-2255, at 4, *reprinted in* U.S. Serial Set vol. 12433 (1962).

passage of the National Bank Act of 1962.[70]  Therein, the committee included a "General

Statement" which made abundantly clear that

> this bill will result in no change in the present distribution of power between
> Federal and State Governments, nor will it cause any weakening of the principles
> underlying the dual banking system. . . . It would not give authority to the
> Comptroller of the Currency to exercise any supervisory functions over State
> banks.[71]

The Office of the Comptroller of the Currency defines "dual banking system" as

> parallel state and federal banking systems that co-exist in the United States. The
> federal system is based on a federal bank charter, powers defined under federal
> law, operation under federal standards, and oversight by a federal supervisor. The
> state system is characterized by state chartering, bank powers established under
> state law, and operation under state standards, including oversight by state
> supervisors.[72]

Therefore, when the plain language of § 92a is read in conjunction with the legislative

history of the contravention clause, it is certain that Congress did not intend the laws of one State

to pre-empt the laws of another State in dealing with a national bank. Rather, Congress made

abundantly clear that "there was no purpose on the part of Congress to disregard the local State

law, but merely to give its assent provided the State law permitted it to be done."[73] In light of the

foregoing, this court determines that Congress has spoken to the precise question at issue, and

has determined that the law that shall apply to a national bank acting as trustee under a trust deed

is the local State law, which in this instance is Utah law.

---

[70]S. Rep. No. 87-2039, *reprinted in* 1962 U.S.C.C.A.N. 2735–36; *see also* H.R. Rep. No.
87-2255, *reprinted in* U.S. Serial Set vol. 12433 (1962) (adopted in substance by S. Rep. No. 87-
2039 and referenced in 1962 U.S.C.C.A.N. 2735–36).

[71]*Id.* at 2736.

[72]Office of the Comptroller of the Currency, *National Banks and the Dual Banking
System* 1 (September 2003), *at* http://www.occ.gov/static/publications/DualBanking.pdf.

[73]51 Cong. Rec. S879 (December 15, 1913) (statement of Sen. Owen).

*(b) Whether the Comptroller's interpretation is reasonable (in the event that the statute is silent or ambiguous)*

Although the reasonableness of the Comptroller's interpretation need only be addressed if Congress has not previously spoken as to the precise question at issue, which it has, for the sake of completeness, the court will also examine the reasonableness of the Comptroller's interpretation found in 12 C.F.R. § 9.7(d).

The Comptroller is charged with interpreting the statute in a reasonable manner. It is not charged with amending the law. The Supreme Court has stated in regards to 12 U.S.C. § 92a(a) that "[n]ot surprisingly, this Court has interpreted those explicit provisions to mean what they say."[74] If § 92a is to mean what it says (i.e., the plain meaning), the reference to "State or local law" at a minimum should be construed to mean the State in which the trust activity occurs.

With the legislative history of § 92a in mind, it is important to note that the Comptroller was not always a proponent of the interpretation found in 12 C.F.R. § 9.7(d). Indeed, in large part, the Comptroller based 12 C.F.R. § 9.7(d) on two interpretive letters issued in October 1999.[75] But rarely mentioned in this rulemaking is the Comptroller's Interpretive Letter No. 695, which issued in December 1995.[76]

The Comptroller issued Interpretive Letter No. 695 in response to a national bank's inquiry as to whether the national bank had authority to conduct fiduciary activities on a nationwide basis through trust offices in various states.[77] Therein, the Comptroller stated that

---

[74]*Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25, 34 (1996).

[75]Interpretive Letter No. 866, 1999 WL 983923 (October 8, 1999); Interpretive Letter No. 872, 1999 WL 1251391 (October 28, 1999).

[76]Interpretive Letter No. 695, 1996 WL 187825 (December 8, 1995).

[77]*Id.* at *1.

> the effect of section 92a is that in any specific state, the availability of fiduciary powers is the same for out-of-state national banks or for in-state national banks and is dependent upon what the state permits for its own state institutions. A state may limit national banks from exercising any or all fiduciary powers in that state, but only if it also bars its own institutions from exercising the same powers. Therefore, a national bank with its main office in one state (such as the proposed trust bank) may conduct fiduciary business in that state and other states, depending upon - *with respect to each state - whether each state allows its own institutions to engage in fiduciary business.*[78]

This interpretation is certainly reasonable as it—consistent with Congress' intent—precludes a competitive advantage as between state-chartered banks and national banks. Such an interpretation also precludes a competitive advantage between in-state national banks and out-of-state national banks. This principle was further emphasized by the Comptroller in Letter No. 695:

> This interpretation of the statute also fosters desirable public policies. First, every national bank offering fiduciary services in a given state will have the same authority to conduct fiduciary business. A national bank conducting fiduciary business and administering trust assets at a trust office will be subject to the same standards irrespective of whether the office is part of an in-state national bank or an out-of-state national bank. Second, there will be a *level playing field for enhanced competition in the provision of fiduciary services within each state, because more potential providers will be able to compete on similar terms.*[79]

This means that a national bank based in Texas which performs fiduciary functions in Utah cannot have a competitive advantage over a Utah-based national bank that performs its fiduciary functions in Utah. However, under the Comptroller's final rule, a national bank based in Texas <u>does</u> have a competitive advantage over a national bank based in Utah as well as Utah-chartered banks. Such a result is simply contrary to Congress' clear intent in enacting § 92a.

The Comptroller further stated that

> section 92a authorizes national banks to offer fiduciary services in multiple states, but then conditions the exercise of that power within each state *on a state-by-state basis* under the same test: is the exercise of fiduciary powers by national banks

---

[78]*Id.* at *4 (emphasis added).

[79]*Id.* at *14 (emphasis added).

prohibited by state law, and even if it is, does that state permit its state institutions to exercise these powers or not. *This result is consistent with other banking statutes that treat a single national bank as present in different states for the purposes of that statute.*[80]

The Comptroller cited various cases to support its position that "for the purposes of these statutes, a national bank is not located only in the place of its main office but can be 'located,' 'situated' or 'existing' in, or be a 'citizen' of, multiple cities, counties, or states."[81] Therefore, in light of Interpretive Letter No. 695, it seems unreasonable, if not irrational, for the Comptroller to now posit that a national bank is only "located" in the place where it conducts "core fiduciary activities."[82]

---

[80]*Id.* at *12 (emphasis added).

[81]*Id.* at *13 (citing *Citizens & S. Nat'l Bank v. Bougas*, 434 U.S. 35, 44 (1977); *Fisher v. First Nat'l Bank of Omaha*, 548 F.2d 255 (8th Cir.1977); *Fisher v. First Nat'l Bank of Chicago*, 538 F.2d 1284 (7th Cir. 1976), *cert. denied*, 429 U.S. 1062 (1977); *Seattle Trust & Sav. Bank v. Bank of Cal. N.A.*, 492 F.2d 48 (9th Cir. 1974), *cert. denied*, 419 U.S. 844 (1974); *Bank of N.Y. v. Bank of Am.*, 853 F. Supp. 736 (S.D.N.Y. 1994); *Conn. Nat'l Bank v. Iacono*, 785 F. Supp. 30 (D.R.I. 1992)).

[82]The Supreme Court in *Cuomo v. Clearing House Ass'n*, 129 S. Ct. 2710 (2009), held that the Comptroller's interpretation of another portion of the National Bank Act—12 U.S.C. § 484(a)—was unreasonable. *See id.* at 2719 ("The Comptroller's regulation, therefore, does not comport with the statute. Neither does the Comptroller's interpretation of its regulation . . . .").

12 U.S.C. § 484(a) provides that "[n]o national bank shall be subject to any visitorial powers except as authorized by Federal law, vested in the courts of justice or such as shall be, or have been exercised or directed by Congress or by either House thereof or by any committee of Congress or of either House duly authorized."

In *Cuomo*, the Comptroller interpreted the statute in a way that would have prohibited the New York Attorney General from obtaining records from national banks to determine if the national banks were complying with state fair-lending laws. *See Cuomo*, 129 S. Ct. at 2714.

23

ReconTrust relies on two other interpretive letters[83] issued by the Comptroller. Those letters were issued nearly four years after Interpretive Letter No. 695 and ostensibly provide the foundation for the Comptroller's issuance of 12 C.F.R. § 9.7.[84] Seemingly contradicting the plain meaning of § 92a's contravention clause as well as Interpretive Letter No. 695, the Comptroller in Interpretive Letter No. 866, stated that the location of a national bank is not determined by the location where the trust assets are located,[85] but rather, where the bank acts in a fiduciary capacity.[86] The Comptroller determined that a bank "acts in a fiduciary capacity" where it reviews proposed trust appointments, executes trust agreements, and makes discretionary decisions about the investment or distribution of trust assets.[87] To then say that a bank does not "act in a fiduciary capacity" when it exercises the trustee's power of sale and does so in Utah is fantasy.

Indeed, how the Comptroller decided to limit the above-listed activities as a trustee's core fiduciary functions, excluding the liquidation or disposal of trust assets, is nowhere explained.

The Comptroller, after issuing an interpretive letter (No. 695) true to the statute's plain meaning and Congress' apparent intent as evinced by Senator Owens' statement in 1913, and Congress' subsequent acts (and corresponding statements) in 1918 and 1962, reversed its

---

[83]*See supra* note 75. Twenty days subsequent to the issuance of Letter No. 866, the Comptroller issued Letter No. 872. The pertinent portion of the Comptroller's analysis in Letter No. 872 is taken verbatim from Letter No. 866, and as such, the court need not separately discuss the substance of Letter No. 872.

[84]*See* 66 Fed. Reg. 34,792-01, 2001 WL 731641, at *34795 (July 2, 2001) ("These conclusions are consistent with the conclusions set out in IL 866 and IL 872.").

[85]*See* 1999 WL 983923, at Part II.B.

[86]*See id.*

[87]*See id.* at Part II.C.

interpretation of the statute to now posit that the State law referred to in § 92a is solely that of the State where the trustee accepts the fiduciary appointment, executes the documents that create the fiduciary relationship, and makes discretionary decisions regarding the investment or distribution of fiduciary assets.

Interestingly, Letter Nos. 866 and 872 also contradict the view expressed in an article[88] co-authored by John D. Hawke, Jr.,[89] which was written prior to Mr. Hawke's appointment as the Comptroller. Mr. Hawke wrote in pertinent part:

> Section 92a specifically provides for deference to state law in defining the powers of a national bank to act as a fiduciary, and does not operate as a grant of authority to create federal common law. Section 92a authorizes the Comptroller to grant to national banks the right to act as trustee and "in any other fiduciary capacity in which State banks, trust companies, or other corporations which come into competition with national banks are permitted to act under the laws of the State in which the national bank is located." On its face, section 92a is geared to principles of state law. Congress has specifically designated the scope of a national bank's trust powers to be coextensive with the trust powers of state banks in the state where the bank is located. *Because the trust powers of state banks vary from state to state, so too do the trust powers of national banks.*
>
> The statutory objective is to attain competitive equality between national banks and their state-chartered counterparts in the exercise of trust powers. *Congress clearly intended national banks acting as trustees in a given state to have the same rights and duties as local state banks.*[90]

---

[88]John D. Hawke, Jr., Melanie L. Fein & David F. Freeman, Jr., *The Authority of National Banks to Invest Trust Assets in Bank-advised Mutual Funds*, 10 Ann. Rev. Banking L. 131 (1991).

[89]According to the Comptroller's website, Mr. Hawke served as the Comptroller of the Currency from 1998 to 2004, which encompasses the October 1999 publication of Letter Nos. 866 and 872, *see* http://www.occ.treas.gov/about/who-we-are/leadership/past-comptrollers/comptroller-john-hawke.html (last visited Mar. 13, 2012).

[90]Hawke, Fein & Freeman, *supra* note 88, at 140 (internal citations omitted) (emphasis added).

Mr. Hawke authored this passage prior to his appointment as Comptroller, and therefore, the above-excerpt was not written while serving in his official capacity. However, Mr. Hawke's analysis strikes the court as reasonable and in line with § 92a's plain meaning and Congress' intent, whereas the final rule promulgated by the Comptroller does not. Moreover, nothing in the final rule explains why the final rule is preferable—let alone reasonable—to the interpretive approach taken in the above-quoted passage and in Interpretive Letter No. 695.

The Comptroller has conceded that "national banks are [not] divorced from the standards of state law in all respects."[91] Indeed, the Comptroller, in quoting the Supreme Court,[92] stated that

> national banks are "subject to the laws of the State, and are governed in their daily course of business far more by the laws of the State than of the Nation. All their contracts are governed and construed by state laws. *Their acquisition and transfer of property*, *their right to collect their debts*, and their liability to be sued for debts, *are all based on state law*."[93]

Certainly a national bank concerns itself with the acquisition and transfer of property, and its right to collect debts—which are both governed and construed by State law[94]—when it acts as successor trustee on a deed of real property, and attempts to foreclose the same through a nonjudicial foreclosure sale.

In sum, the national statutes which created a dual banking system operate to deny out-of-state national banks any competitive advantage over local, state-chartered banks or in-state

---

[91]Office of the Comptroller of the Currency, *National Banks and the Dual Banking System* 26 (September 2003), *at* http://www.occ.gov/static/publications/DualBanking.pdf.

[92]*Nat'l Bank v. Commonwealth*, 76 U.S. 353 (1869) (emphasis added).

[93]*Id.* at 362; *see also* Office of the Comptroller of the Currency, *National Banks and the Dual Banking System* 27 (September 2003), *at* http://www.occ.gov/static/publications/DualBanking.pdf (quoting *Bank of Am. v. City & County of San Francisco*, 309 F.3d 551, 559 (9th Cir. 2002)).

[94]*See Nat'l Bank v. Commonwealth*, 76 U.S. at 362.

national banks. Such was and is the will of Congress as expressed in statutory language and legislative history, both consistent with the principles of Federalism, as reflected in the Tenth Amendment of the Constitution.

The Comptroller's interpretation of § 92a, as set forth in 12 C.F.R. § 9.7(d),  modifies the statute and gives out-of-state national banks a sizeable competitive advantage over their state-chartered counterparts and in-state national banks in states—such as Utah—where state-chartered banks and in-state national banks are not allowed to perform certain fiduciary functions, namely exercising the power of sale in non-judicial trust deed foreclosures.

Thus, 12 C.F.R. § 9.7(d) does not justify the deference contemplated in *Chevron* for agency construction of pertinent statutes.

There are fifty States. Each has its own legislature and each its own set of laws relating to state-chartered banks. Texas does not pass Utah banking laws. Utah does not pass Texas banking laws. Utah banks are limited by Utah laws as to the manner of conducting non-judicial foreclosures of real property. National statutes have recognized that local laws have a role to play in a dual banking system and have done so from at least 1913, when the Federal Reserve Act was passed and predecessor language was first installed in that Act.

**2. The competition clause of 12 U.S.C. § 92a**

12 U.S.C. § 92a(a) permits the Comptroller to grant a national bank the power to act in any fiduciary capacity that a state bank, corporation or organization "which come[s] into competition with national banks are permitted to act under the laws of the State in which the national bank is located."

Driving the point home, Congress also enacted subsection (b), which provides that

[w]henever the laws of such State authorize or permit the exercise of any or all of the foregoing powers by State banks, trust companies, or other corporations *which compete with national banks*, the granting to and the exercise of such powers by national banks shall not be deemed to be in contravention of State or local law within the meaning of this section.[95]

The Supreme Court had an opportunity to examine the statute in *Burnes Nat'l Bank v. Duncan*,[96] wherein Justice Holmes opined that the foregoing passages state "in a roundabout and polite but unmistakable way that whatever may be the State law, national banks having the permit of the Federal Reserve Board may act as executors if trust companies competing with them have that power."[97] The holding in *Burnes Nat'l Bank* also applies to national banks who wish to act as trustees so long as competing State institutions also act as trustees.

This is of no help to ReconTrust, a subsidiary of a national bank. It is not in competition with a bar member. It is not in competition with a title insurance company. Indeed, the statutes prohibit a bank from engaging in title insurance activity.[98]

Utah Code Ann. §§ 57-1-21, 57-1-23.5 were both drafted so that the fiduciaries contemplated in 12 U.S.C. § 92a (including both state banks and national banks acting as trustees) would have to work in concert with—not in competition with—title insurance companies and active members of the State bar. Indeed, a state or national bank, acting as trustee, must procure the services of either an active member of the State bar or title insurance company in order to comply with the Utah law.

---

[95] 12 U.S.C. § 92a(b) (emphasis added).

[96] 265 U.S. 17 (1924).

[97] *Id.* at 23.

[98] 15 U.S.C.A. § 6713(a) (2009) ("No national bank may engage in any activity involving the under-writing or sale of title insurance.").

Banks compete with banks. Indeed, ReconTrust's status is by definition that of a national bank, and in this specialized and limited area of trust activity, it, like all banks must comply with local law.

### III. CONCLUSION

In light of the foregoing, plaintiffs' claim for declaratory relief under Utah Code Ann. § 57-1-23.5 satisfies the standards set forth in *Twombly* and *Iqbal*.

Because of ReconTrust's lack of authority to exercise the power of sale in a non-judicial foreclosure action within Utah,

**IT IS ORDERED** that defendants' motion to dismiss is hereby **DENIED**.

DATED this _15th_ day of March, 2012.

BY THE COURT:

BRUCE S. JENKINS
United States Senior District Judge

29