IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

\* \* \* \* \* \* \* \* \*

| | |
|---|---|
| TIMOTHY R. BELL, an individual; and JENNIFER BELL, an individual, | ) ) ) Civil No. 2:11-CV-00271-BSJ |
| Plaintiffs, | ) ) **MEMORANDUM OPINION** |
| vs. | ) **& ORDER** ) **(Fed. R. Civ. P. 24)** |
| COUNTRYWIDE BANK, N.A. d/b/a BANK OF AMERICA CORPORATION, a Delaware corporation; BAC HOME LOANS SERVICING, LP, a Texas limited partnership; RECONTRUST COMPANY, N.A., a national association; and DOES 1-5, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**FILED**
CLERK, U.S. DISTRICT COURT
July 26, 2012 (9:59am)
DISTRICT OF UTAH

\* \* \* \* \* \* \* \* \*

On April 10, 2012, the State of Utah (the "State" or the "Attorney General") filed a motion to intervene in the above-captioned matter,[1] noting that "[t]he sole purpose of this intervention is for the State to protect the validity and application of its statutes to national banks acting in the State of Utah."[2] Specifically, the State is concerned with defendants' interpretation of Utah Code Ann. §§ 57-1-21, 57-1-23,[3] which collectively limit a trustee's power of sale to be exercised only by a member of the Utah State Bar who maintains a place of business within the state, or a title insurance company or agency. Defendants have consistently disputed, and

---

[1](*See* Mot. to Intervene, filed April 10, 2012 (CM/ECF No. 98) ("State's Mot.").)

[2](*Id.* at 2.)

[3](*Cf.* Mem. in Supp. of Mot. to Intervene, filed April 10, 2012 (CM/ECF No. 99) ("State's Mem."), at 5.)

continue to dispute the validity of the foregoing Utah Code sections, maintaining that 12 U.S.C. § 92a and 12 C.F.R. § 9.7(d) effectively preempt the Utah statutes, thus allowing out-of-state national banks—such as ReconTrust—to conduct non-judicial foreclosures of trust deeds on real property located in Utah. The court has already addressed those issues on a preliminary basis in an earlier memorandum opinion and order.[4] The question at this time is whether the State should be allowed to intervene in this case.

The State initially pursued intervention under Fed. R. Civ. P. 24(a),[5] relying on an "intervention of right" theory: pursuant to Rule 24 (a)(1), the State asserted that 28 U.S.C. § 2403(b) gave the State an unconditional right to intervene in this matter;[6] and pursuant to subsection (a)(2), the State also asserted that "the State claims an interest which, as a practical matter, may be impaired or impeded by the disposition of the pending action, and that interest is not adequately represented by the existing parties."[7] In the alternative, the State also sought permissive intervention pursuant to Fed. R. Civ. P. 24(b).[8]

On May 11, 2012, defendants filed an opposition to the State's motion to intervene,[9] arguing that the Attorney General's motion was untimely,[10] failed to demonstrate a right to

---

[4] *See* Bell v. Countrywide Bank, N.A., --- F. Supp. 2d ----, No. 2:11-cv-00271-BSJ, 2012 WL 899290 (D. Utah Mar. 15, 2012).

[5] (State's Mem. at 4.)

[6] (*See id.*)

[7] (*Id.* at 5.)

[8] (State's Mot. at 2.)

[9] (Defs.' Opp'n to Att'y General's Mot. to Intervene, filed May 11, 2012 (CM/ECF No. 103) ("Defs.' Opp'n").)

[10] (*See id.* at 2–4.)

intervene under Fed. R. Civ. P. 24(a),[11] and failed to comply with Fed. R. Civ. P. 24(c).[12]

Interestingly, in a footnote at the end of their opposition memorandum, defendants briefly referenced a Consent Judgment, approved by the U.S. District Court for the District of Columbia on April 4, 2012, and encompasses an agreement as between Bank of America and forty-nine attorneys general (one of whom was the Utah Attorney General).[13] Defendants attached the Consent Judgment and related documents as Exhibit B to their opposition, which totaled 534 pages, 223 of which appear to be duplicates.[14] Within the footnote, defendants asserted that through the Consent Judgment, the Attorney General

> agreed to release Bank of America, N.A., and its direct and indirect subsidiaries from any "civil or administrative claim, of any kind whatsoever, direct or indirect, that an Attorney General or Regulator, respectively, has or may assert" including claims for injunctive relief arising out of "[t]rustee functions related to the foreclosure of residential mortgage loans."[15]

On May 22, 2012, the State of Utah filed a reply brief in support of its motion to intervene.[16]

The matter came on for hearing on June 25, 2012,[17] at which time Jerrold S. Jensen appeared on behalf of the State of Utah, Amy Miller, Phillip C. Chang, and Philip D. Dracht appeared on behalf of defendants, and Abraham C. Bates appeared on behalf of the plaintiffs. At

---

[11](*See id.* at 2, 5–8.)

[12](*See id.* at 2, 9.)

[13](*Id.* at 9 n.3)

[14](*See* Consent J., filed May 11, 2012 (CM/ECF No. 103-2).)

[15](Defs.' Opp'n at 9 n.3 (quoting Consent J. Ex. G at G-3, G-5).)

[16](*See* State of Utah's Reply to Defs.' Opp'n, filed May 22, 2012 (CM/ECF No. 106).)

[17](Transcript of Hearing, dated June 25, 2012 (CM/ECF No. 115) ("Tr. 6/25/12").)

the hearing, the court denied the State's motion as to intervention of right,[18] and reserved on the State's permissive intervention request.[19] The court also granted the State until the 5th of July to file a proposed pleading pursuant to Fed. R. Civ. P. 24(c).[20]

The State submitted a proposed complaint in intervention on July 5, 2012,[21] requesting that the court enter declaratory relief as against the defendants[22] that "Utah law, pursuant to Utah Code §§ 57-1-21 and 57-1-23, prohibits State chartered financial institutions from conducting non-judicial real estate foreclosures in the State of Utah, and therefore that same law applies to national banks,"[23] and that "ReconTrust, when conducting non-judicial real estate foreclosures in the State of Utah, is in violation of both the National Bank Act, 12 U.S.C. § 92a, and Utah Code Ann. §§ 57-1-21 and 57-1-23."[24]

On July 13, 2012, defendants—now having had an opportunity to review the proposed complaint in intervention—filed a stipulated motion for leave to file a supplemental brief in opposition to the Attorney General's motion to intervene.[25] Defendants attached the supplemental

---

[18](*Id.* at 26:10–11.)

[19](*Id.* at 26:11–12, 26:15–16.)

[20](*Id.* at 26:13–15, 34:20–35:1.)

[21](*See* Proposed Compl. in Intervention, filed July 5, 2012 (CM/ECF No. 111) ("Proposed Compl.").)

[22](*See id.* at 4–5.)

[23](*Id.* at 5.)

[24](*Id.*)

[25](*See* Stipulated Mot. for Leave to File Supplemental Mem., filed July 13, 2012 (CM/ECF No. 113).)

memorandum to the motion.[26] The court signed an order on July 16, 2012, granting defendants leave to file the supplemental memorandum and deemed the supplemental memorandum as filed with the court on July 13, 2012.[27]

At the June 25th hearing, the Consent Judgment argument—which occupied only a portion of a footnote in defendants' opposition—was presented as defendants' most significant argument.[28] Defendants are concerned that the State has expressed an intention[29] to conduct discovery if the court were to allow the State to intervene in this matter, and defendants assert that such discovery would be barred by the Consent Judgment.[30] As such, defendants have proposed that rather than allowing the State to intervene, the court should allow the State to act as *amicus curiae*.[31] Defendants posit that this would afford the State the opportunity to present argument to protect the integrity of its statutes, yet would prevent the State from conducting discovery.[32]

**Consent Judgment of April 4, 2012**

"A consent decree is a negotiated agreement that is entered as a judgment of the court."[33]

---

[26](*See* Supplemental Br. in Opp'n to the Attn'y General's Mot. to Intervene, filed July 13, 2012 (CM/ECF No. 113-2) ("Defs.' Supplemental Br.").)

[27](*See* Order, filed July16, 2012 (CM/ECF No. 114).)

[28](*See* Tr. 6/25/12 at 7:5–10, 8:1–9:1, 11:9–12:7, 15:13–14, 15:18–16:18, 22:11–23:7, 23:22–24:15.)

[29](*Id.* at 20:4–21:4.)

[30](*See id.* at 23:22–24:15; *see also, e.g.*, *supra* note 23.)

[31](*See* Tr. 6/25/12 at 6:23–7:2, 13:24–14:3, 16:21–17:3.)

[32](*See id.* at 13:24–14:3, 16:21–17:3.)

[33] *Johnson v. Lodge #93 of Fraternal Order of Police*, 393 F.3d 1096, 1101 (10th Cir.
(continued...)

"'Consent decrees, therefore, have characteristics both of contracts and of final judgments on the merits.'"[34] Indeed, a consent judgment or consent decree is more than just a voluntary settlement agreement; it is also a final order that "places the power and prestige of the court behind the compromise struck by the parties."[35]

"[W]hile a consent decree is accorded the weight of a final judgment, it 'is to be construed . . . basically as a contract,'"[36] and should be "construed with reference to ordinary contract principles."[37] Accordingly, the court has the authority to interpret consent decrees when circumstances require it to do so.[38] Certainly, a consent decree "'must be construed as it is written, and not as it might have been written had the plaintiff established his factual claims and legal theories in litigation.'"[39]

Here, defendants urge the court to enforce the Consent Judgment, which they claim

---

[33](...continued)
2004).

[34]*Id.* (quoting *Sinclair Oil Corp. v. Scherer*, 7 F.3d 191, 193 (10th Cir. 1993)).

[35]*David C. v. Leavitt*, 13 F. Supp. 2d 1206, 1209 (D. Utah 1998) (quoting *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983)).

[36]*Satsky v. Paramount Commc'ns, Inc.*, 7 F.3d 1464, 1468 (quoting *United States v. ITT Cont'l Banking*, 420 U.S. 223, 238 (1975)).

[37]*City of Las Vegas v. Clark County, Nevada*, 755 F.2d 697, 702 (9th Cir. 1984); *see also Joseph A. ex rel. Wolfe v. N.M. Dep't of Human Servs.*, 69 F.3d 1081, 1085 (10th Cir. 1995) (treating a phrase within a consent decree as a contract term).

[38]*See, e.g.*, *E.E.O.C. v. Safeway Stores, Inc.*, 611 F.2d 795, 798 (10th Cir. 1979) ("It is clear that the enforcing court has power to interpret a decree when its language results in confusion."); *In re Pearson*, 990 F.2d 653, 657 (1st Cir. 1993) ("a court retains authority to . . . interpret such decrees in light of changed circumstances").

[39]*ITT Cont'l Banking*, 420 U.S. at 236 (footnote omitted) (quoting *United States v. Armour & Co.*, 402 U.S. 673, 682 (1971)).

would effectively prohibit the State's intervention in this matter.[40] In support of this assertion, defendants direct the court's attention to various provisions of the Consent Judgment. In one of the provisions, the Attorney General agreed to

> release and forever discharge the Bank from the following: any civil or administrative claim, of any kind whatsoever, direct or indirect, that an Attorney General . . . has or may have or assert, including, without limitation, claims for . . . injunctive relief, remedies, sanctions, or penalties of any kind whatsoever based on, arising out of, or resulting from the Covered Conduct on or before the Effective Date.[41]

"Covered Conduct" includes "residential foreclosure services,"[42] which defendants correctly point out is defined to include "all actions, errors, or omissions of the Bank arising out of or relating to foreclosures on residential mortgage loans, . . . including, but not limited to . . . (8) Trustee functions related to the foreclosure of residential mortgage loans."[43] Defendants assert that because "the Attorney General's Proposed Complaint is entirely about ReconTrust's actions while serving as foreclosure trustee in Utah (particularly the *Bell* case), ReconTrust's actions fall squarely within the "Covered Conduct."[44] Defendants further state that "it is hard to see what the Attorney General seeks by intervening here other than to threaten the legitimacy of past, completed foreclosures in Utah."[45]

Defendants misconstrue the State's simple and clear purpose for intervention. It should

---

[40](*See* Defs.' Supplemental Br. at 2 ("it is clear that the National Mortgage Settlement bars the exact claims [the Attorney General] wishes to join the litigation to assert").)

[41](Consent J. Ex. G at G-5.)

[42](*Id.* Ex. G at G-1.)

[43](*Id.* Ex. G at G-3–G-4.)

[44](Defs.' Supplemental Br. at 4.)

[45](*Id.*)

not be hard for defendants to see what the Attorney General seeks by intervening in this matter. Indeed, the Attorney General has stated quite plainly that he seeks "to protect the validity and application of [Utah] statutes to national banks acting in the State of Utah,"[46] relief that is prospective in nature.[47]

Although defendants have accurately cited the foregoing portions of the Consent Judgment, they omit any reference to the language of the same document, stating that "[n]othing in this Consent Judgment shall relieve Defendant of its obligation to comply with applicable state and federal law,"[48] which is also prospective in nature.

Assuming but not finding that ReconTrust has halted its foreclosure operations within the State of Utah,[49] so long as the defendants argue and litigate that ReconTrust need not comply with Utah Code Ann. §§ 57-1-21, 57-1-23, they can expect that the State will seek to intervene to protect the integrity of the Utah statutes as "applicable state law" within the meaning of the Consent Judgment.

**Fed. R. Civ. P. 24(b)(2)(A)**

Fed. R. Civ. P. 24(b)(2)(A) reads: "On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on: (A) a

---

[46](State's Mot. at 2.)

[47]The language defendants rely on speaks of "Covered Conduct on or before the Effective Date," not the defendants' conduct thereafter. (Consent J. Ex. G at G-5.)

[48](Consent J. at 7.)

[49]Defendants submit that "ReconTrust has ceased foreclosure operations in Utah as of late 2011." (Defs.' Supplemental Br. at 4.)

statute or executive order administered by the officer or agency."[50]

The Attorney General satisfies the requirements of Fed. R. Civ. P. 24(b)(2)(A). He is a state governmental officer who is charged by statute with "institut[ing] and prosecut[ing] proper proceedings in any court of . . . the United States, to restrain and enjoin corporations organized under the laws of this or any other state or territory from acting illegally or in excess of their corporate powers or contrary to public policy."[51] Here, ReconTrust asserts that it need not comply with Utah Code Ann. §§ 57-1-21, 57-1-23. From the Attorney General's perspective, ReconTrust would be acting illegally were it to act on these assertions and conduct non-judicial foreclosures of trust deeds on real property located in Utah, and as such, the Attorney General has the power to enjoin such threatened conduct.

However, pursuant to Fed. R. Civ. P. 24(b)(1), timeliness is a threshold issue, and because Fed. R. Civ. P. 24 "is silent as to what constitutes a timely application for intervention, the question must be answered in each case by the exercise of the sound discretion of the trial court."[52] "The timeliness of a motion to intervene is assessed 'in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances.'"[53] It is also important to keep in mind that "[t]he requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties

---

[50]Fed. R. Civ. P. 24(b)(2)(A).

[51]Utah Code Ann. § 67-5-1(13) (LexisNexis 2011 Replacement).

[52]*Lumbermens Mut. Cas. Co. v. Rhodes*, 403 F.2d 2, 5 (10th Cir. 1968).

[53]*Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001) (quoting *Sanguine, Ltd. v. United States Dep't of Interior*, 736 F.2d 1416, 1418 (10th Cir. 1984)).

by the failure to apply sooner. Federal courts should allow intervention where no one would be hurt and greater justice could be attained."[54]

Defendants argue that the State knew about the litigation of these claims more than a year ago, but waited until now to seek intervention, and that the Tenth Circuit has rejected this "wait and see" approach.[55] Defendants cite to *Clark v. State Farm Mut. Auto. Ins. Co.*[56] and *Lumbermens Mut. Cas. Co. v. Rhodes*[57] to support the assertion that the State's motion to intervene is untimely. In both these cases, the proposed intervenors sought intervention after the court had entered judgment.[58]

Unlike *State Farm* and *Lumbermens*, the court has not entered judgment in this case. Indeed, this case is still in the pleading stage. As far as the court is aware, the parties have yet to engage in discovery. Further, defendants very recently filed their answer to plaintiffs' complaint.[59] Procedurally, the case is young.

Defendants also argue that they "would be prejudiced because a belated intervention would result in repetitive arguments, duplicative efforts, increased costs, and undue delay in the

---

[54]*Clinton*, 255 F.3d at 1250 (internal quotations omitted).

[55](*See* Defs.' Opp'n at 3.) As far as the court can tell, the State has never acknowledged that it knew about this case for more than a year prior to filing its motion to intervene. In any event, the same is inconsequential as Fed. R. Civ. P. 24 is not to be used "as a tool of retribution" to punish the State. *See supra* note 54.

[56]590 F.3d 1134, 1140–41 (10th Cir. 2009).

[57]403 F.2d 2, 5 (10th Cir. 1968).

[58]*See State Farm*, 590 F.3d at 1137 ("The court entered judgment for Clark, and in March 2006, State Farm paid the full amount of PIP benefits awarded to Clark, including post-judgment interest."); *see also Lumbermens*, 403 F.2d at 4 ("Several months *after the entry of judgment*, Lumbermens Mutual Casualty Company, the alleged surety under a Nebraska 'Public Employees Blanket Bond', moved to intervene." (emphasis added)).

[59](*See Defs.' Answer*, filed July 20, 2012 (CM/ECF No. 117).)

litigation."[60] The court is not persuaded by this argument.[61]

Because this case is still in the pretrial stage, prejudice, if any, to defendants is minimal, and "greater justice could be attained" by allowing the State to intervene.[62]

For the reasons explained above in some detail,

**IT IS ORDERED** that the State's Motion to Intervene[63] is GRANTED; and

**IT IS FURTHER ORDERED** that the State's Complaint in Intervention[64] is deemed filed with the court as of the date of this order; and

**IT IS FURTHER ORDERED** that defendants respond to the Complaint in Intervention within twenty (20) days from the entry of this order.

DATED this 26th day of July, 2012.

BY THE COURT:

BRUCE S. JENKINS
United States Senior District Judge

---

[60] (Defs.' Opp'n at 4.)

[61] If—as the defendants assert—the State's and plaintiffs' arguments are repetitive or duplicative, then the defendants will not have to spend additional time preparing separate strategies for separate arguments.

[62] *Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001) (quotation omitted).

[63] (CM/ECF No. 98.)

[64] (CM/ECF No. 111.)