```
 1                    UNITED STATES DISTRICT COURT
 2                 DISTRICT OF UTAH, CENTRAL DIVISION
 3
 4  Bell, et al.,
 5                                         Civil No.  2:11-CV-00271
         Plaintiffs,
 6
    v.
 7                                         Judge Bruce S. Jenkins
    Countrywide Bank NA, et al.,
 8
         Defendants.
 9
10
11
12
13
14
15              THURSDAY, SEPTEMBER 27, 2012
16         Status Report and Scheduling Conference
17
18
19
20
21
22      REPORTED BY:  Michelle Mallonee, RPR
23
24
25
                                                                    1
```

```
 1                         APPEARANCES

 2


 3   For the Plaintiffs Timothy and Jennifer Bell:

 4   ABRAHAM C. BATES, ESQ.
     WASATCH ADVOCATES, LLC
 5       4525 Wasatch Boulevard, Suite 300
         Salt Lake City, Utah 84124
 6       Telephone: (801) 662-0077

 7


 8   For the Plaintiff State of Utah:

 9   WADE A. FARRAWAY, ESQ.
     Utah Attorney General's Office
10       5272 College Drive, Suite 200
         Murray, Utah 84123
11       Telephone: (801)281-1258

12


13   For the Bank Defendants:

14   AMY MILLER, ESQ.
     MCGUIRE WOODS, LLP
15       2001 K Street N.W., Suite 400
         Washington, DC 20006-1040
16       Telephone: (202) 857-1700
         Email: amiller@mcguirewoods.com
17

18

19

20

21

22

23

24

25
```

1       Thursday, September 27, 2012; Salt Lake City, Utah
2                         1:20 p.m.
3           THE COURT:  Good afternoon.  And why don't we
4  turn now to Bell and others versus Countrywide and
5  others.  It's 11-C-271, calendared for a status report
6  and scheduling conference.  Those who are making
7  appearances, if you'll be kind enough to make a record
8  for us.  Tell us who you are and whom you represent.
9           MR. BATES:  Abraham Bates on behalf of
10 plaintiffs Timothy and Jennifer Bell.
11          MR. FARRAWAY:  Wade Farraway on behalf of the
12 State of Utah.
13          MS. MILLER:  Amy Miller on behalf of the bank
14 defendants.
15          THE COURT:  Well, tell me where we are.  The
16 last meeting I had, someone suggested they were in the
17 settlement mode.
18          MS. MILLER:  Your Honor, we have conferred
19 amongst ourselves and come up with a proposed --
20          THE COURT:  I've seen the proposed order.  But
21 tell me what you really have to do, what you have to do
22 by way of prep work.
23          MS. MILLER:  Tell the Court what we have to do
24 in terms of prep work?  In terms of discovery, or in
25 terms of something else?

```
 1              THE COURT:  We're talking about discovery, if
 2   any.
 3              MS. MILLER:  Well, we are ready to begin
 4   discovery.  We've obviously briefed the --
 5              THE COURT:  Well, who do you propose to
 6   discover?
 7              MS. MILLER:  Through traditional means.
 8              THE COURT:  I'm sorry?
 9              MS. MILLER:  Through traditional means, your
10   Honor.
11              THE COURT:  Oh, yes.
12              MS. MILLER:  Yes.  Through written discovery.
13              THE COURT:  Whatever.
14              MS. MILLER:  And depositions.
15              THE COURT:  No.  What needs to be discovered in
16   this case?
17              MS. MILLER:  Well, we may let plaintiffs speak
18   to that.  But defendants would, obviously, like to depose
19   the plaintiffs regarding their claims, especially on the
20   loan modification and the promissory estoppel claims.
21              THE COURT:  Okay.  Do you have contact with your
22   people?
23              MR. BATES:  Yes, your Honor.
24              THE COURT:  And they're available for discovery?
25              MR. BATES:  They are, absolutely.
```

4

```
 1            THE COURT:  And they're available when?  Any
 2   day?
 3            MR. BATES:  Yes.
 4            THE COURT:  Okay.  Who besides the plaintiff?
 5            MS. MILLER:  In terms of depositions, not aware
 6   of any other individuals that we would --
 7            THE COURT:  Okay.
 8            MS. MILLER:  -- depose.
 9            THE COURT:  Let's fix a time when you can depose
10   them.  They're available any time.  Would you like to
11   depose them tomorrow?
12            MS. MILLER:  No, your Honor, we would not like
13   to depose them tomorrow.  But we would like to depose
14   them soon.
15            THE COURT:  All right.  Well, let's fix a time
16   and place.
17            MS. MILLER:  Your Honor, we would like to get
18   some documents from the plaintiff before we conduct the
19   deposition.
20            THE COURT:  Okay.  Now, which documents are you
21   interested in?
22            MS. MILLER:  The documents that they have in
23   their possession regarding their communications with the
24   Bank and their alleged attempts at a modification.
25            THE COURT:  Okay.  I put up here on my calendar
```

1   the Court's files in reference to this case.  And you're
2   talking about written communications?
3           MS. MILLER:  Whatever they have in their
4   possession, yes.
5           THE COURT:  That they sent to the Bank?
6           MS. MILLER:  Or amongst themselves or amongst
7   their advisor that communicated on their behalf with the
8   Bank.
9           THE COURT:  Now, "the Bank."  Which bank are we
10  talking about?
11          MS. MILLER:  Well, they were not very clear
12  about that in their Complaint.  And that is one issue
13  that we'd like to clarify with them.
14          THE COURT:  Okay.  And other than that?
15          MS. MILLER:  Other than the written discovery
16  and depositions, we'll have to confer with our client.
17  But we're not aware of any other types of discovery at
18  this time.
19          THE COURT:  Well, let's fix a time.  When are
20  your clients available?
21          MR. BATES:  Your Honor, I presume they could
22  make themselves available over the next few weeks.
23          THE COURT:  Let's pick a convenient date so
24  counsel may take their depositions.  Any time the first
25  week of October?

1       MS. MILLER:  Your Honor, I am not available the
2  first week in October.
3       THE COURT:  Okay.  The second week of October?
4       MS. MILLER:  We would propose the first full
5  week in November.
6       THE COURT:  I'm sorry?  You propose what?
7       MS. MILLER:  Your Honor, we would like some
8  written discovery before we take the plaintiff's
9  deposition.
10      THE COURT:  You're welcome to do that.  But I am
11 going to fix a time when you can discover.  And I'm
12 interested in getting your discovery over with.  We're
13 simply going to move ahead.  This matter's been around
14 here for a long time.
15      Are you available the second week of October?
16 You have local counsel who is capable of running
17 depositions as well.
18      MS. MILLER:  Your Honor, again, before we take
19 the depositions, we would like to take some written
20 discovery and receive the plaintiff's documents.
21      THE COURT:  I take it you don't want any
22 discovery with the State of Utah.  They're only
23 interested here in a legal proposition.
24      MS. MILLER:  We are not ruling out taking
25 written discovery of the State of Utah as well.

1        THE COURT:  Okay.  Tell me who you want to
2   discover.  They're here for a limited purpose.
3        MS. MILLER:  Well, we have the right, and we
4   have the desire to serve written discovery on the State
5   of Utah.  And, based on the production of documents and
6   responses to those discovery requests, we may also want
7   to take depositions --
8        THE COURT:  They were given the limited
9   discretionary intervention right in this particular
10  instance for a very limited purpose.  They were
11  interested in upholding the statute.
12       I take it the State has no discovery?
13       MR. FARRAWAY:  Your Honor, if the State has any
14  discovery, it would be with maybe some members of the
15  ReconTrust as one of the defendants.  But that would be
16  probably pretty limited.  Obviously the State's
17  interest -- we'd like to see the trial occur sooner than
18  later, and that would be the State's interest in
19  upholding the statute.  Obviously, there is a case,
20  Garrett, which is up in the Tenth Circuit.  And,
21  obviously, that --
22       THE COURT:  I'm familiar with the fact that
23  there's a case in the Tenth Circuit.  And I'm interested
24  in getting this matter in a trial mode so we can get it
25  tried.

1           MR. BATES:  Your Honor, given that --
2           THE COURT:  I'm sorry?
3           MR. BATES:  Given that, defendants' argument on,
4  essentially, a declaratory judgment claim is that the
5  laws of the State of Texas control.  I believe both my
6  clients and the State of Utah have an interest in doing
7  some discovery as to figuring out what exactly these
8  ReconTrust officers and agents did or did not do in the
9  State of Texas related to the trust property located
10 within the state of Utah.
11          THE COURT:  Haven't they already told you that?
12 Have the plaintiffs --
13          MR. BATES:  I --
14          THE COURT:  -- heretofore --
15          MR. BATES:  -- I don't believe so, not as to the
16 individuals who executed the documents at issue; for
17 example, the Substitution of Trustee, the Notice of
18 Default, and the other nonjudicial foreclosure actions as
19 to the trust property.  We know very little, if anything.
20          THE COURT:  I'm not concerned with everybody
21 else.  We're concerned with the plaintiffs.
22          MR. BATES:  Understood.  Would the Court --
23          THE COURT:  When can you get your work done?
24          MR. BATES:  I'm sorry?
25          THE COURT:  How soon can you get your work done?

```
 1              MR. BATES:  In both written discovery and
 2    deposition?
 3              THE COURT:  How soon can you get your work done?
 4              MR. BATES:  Two months.
 5              THE COURT:  You've been here a couple of years.
 6              MR. BATES:  I understand.  We are waiting for
 7    defendants to file their answer.
 8              THE COURT:  It took awhile.  They were
 9    negotiating, they said.  Were you negotiating with them?
10              MR. BATES:  No, not negotiating with my clients.
11              THE COURT:  I'm sorry?
12              MR. BATES:  Not --
13              THE COURT:  Was the State of Utah negotiating
14    with them?
15              MR. FARRAWAY:  Your Honor, there was some
16    negotiation with ReconTrust, and they basically agreed to
17    stop doing business in the state of Utah.  Other than
18    that negotiation, no.
19              THE COURT:  That was a long time ago.
20              MR. FARRAWAY:  Yes.  Well, yes.
21              THE COURT:  In the last three weeks, have you
22    been negotiating with anybody?
23              MR. FARRAWAY:  No, not the State of Utah and any
24    of the defendants in this case.
25              MS. MILLER:  That's not correct.  I don't know
```

                                                              10

1   about the last two weeks, but certainly well up until the
2   time that we served our --
3           THE COURT:  Well, since July, there have been
4   applications to extend the time to file an answer.  And
5   the justification used for extending the time to file an
6   answer was that they were negotiating with the parties in
7   the case.
8           MS. MILLER:  Yes.  And there were face-to-face
9   meetings.
10          THE COURT:  I'm sorry?
11          MS. MILLER:  There were face-to-face meetings
12  with lawyers of our firm and --
13          THE COURT:  Why don't you tell me what they are?
14          MR. FARRAWAY:  Your Honor, I think she's
15  referring -- there was a meeting with some of the lawyers
16  for ReconTrust with the attorney general, but not with
17  the two attorneys assigned to the case, which is myself
18  and Jerrold Jensen.  But there were meetings that -- I do
19  not know the nature of those meetings that occurred with
20  the attorney general and, I believe, his chief deputy,
21  John Swallow.
22          THE COURT:  In the last what?
23          MR. FARRAWAY:  I don't know.  But no discussions
24  have been held with the attorneys of record, which I am
25  the newest one in the case.  However, in talking with

                                                          11

```
 1   Jerrold Jensen, there were no conversations with him as
 2   to any --
 3             THE COURT:  But the pleadings filed that the
 4   State stipulated to asserted that the time extension
 5   should be granted because negotiations were going on.
 6             MS. MILLER:  And, your Honor, that is correct.
 7   Members of the in-house legal department of Bank of
 8   America and partners of McGuire Woods met with members
 9   of --
10             THE COURT:  Did any attorneys of record in this
11   case meet?
12             MS. MILLER:  Well, Attorney General --
13             MR. FARRAWAY:  Well, Mr. Shurtleff --
14             MS. MILLER:  Attorney General Shurtleff is
15   attorney of record in this case.
16             MR. FARRAWAY:  Yes.
17             THE COURT:  Well, I'm going to find out, and I'm
18   interested in having people tell me accurately if the
19   justification set forth in the application for an
20   extension for filing and answer actually occurred.
21             MS. MILLER:  Your Honor, you have our
22   representation that they occurred.  There were phone
23   calls, there were emails, there were letters, and there
24   was a face-to-face meeting in hopes of reaching a
25   resolution with the State of Utah.  We were not able to
```

1   reach a resolution.
2           THE COURT:  Well, people who come in this
3   courtroom need to tell the Court the absolute straight
4   story.  And those who file pleadings in this courtroom
5   need to tell the Court an absolute straight story.  The
6   Court relies upon officers of the court.
7           Well, the State doesn't have much of anything at
8   this point to do.  And Mr. Abraham indicates he can
9   finish his work in 60 days.  Is that adequate?
10          MS. MILLER:  We don't believe that 60 days is
11  enough time to serve written discovery, receive it, and
12  take depositions.  We would need longer than that.  And I
13  would point out that the proposed schedule that we filed
14  yesterday was agreed by the other parties.
15          THE COURT:  It contemplated a year to do
16  something that ought to take a few days, frankly.  And I
17  won't sign off on the stipulation.
18          We'll fix some dates where you can get your work
19  done, and then we'll set the matter for pretrial.
20          MS. MILLER:  Well, we would recommend at least
21  four months.
22          THE COURT:  I'm sorry?
23          MS. MILLER:  We would recommend at least four
24  months to have discovery take place.
25          THE COURT:  Well, as I view it, there's a not a

1  lot of discovery.  There are not a lot of disputed facts
2  that I can see.
3         MS. MILLER:  The claims do not involve just the
4  ReconTrust legal issue.  The claims also involve the
5  promissory estoppel claim.
6         THE COURT:  Oh, I understand that.
7         File your written discovery by not later than
8  the 15th of October.  Complete your discovery by the end
9  of the year.  Post-discovery motions, if any, file them
10 by the 14th of January.  And let's pre-try the matter on
11 Tuesday the 26th of February, 9:30 in the morning.
12        I'm interested in an agreed form of pretrial
13 order, disputed issues identified; a roster of all your
14 witnesses for your respective cases-in-chief, a roster of
15 all your witnesses as well as your exhibits for your
16 respective cases-in-chief; counsel prepared to talk
17 theory, that's legal theory; authority, legal authority;
18 and to talk facts, including expert opinions, if any.
19        If you'll get that to me the prior Thursday,
20 namely, the 21st of February, signed off on by each of
21 the attorneys, I'd appreciate that.
22        I'll ask counsel for plaintiff to prepare and
23 submit a suggested form of order with those target dates
24 and times.  And I'd like counsel for the State of Utah
25 and counsel for the defendants each to submit to me the

```
 1  names of those purportedly engaged in settlement
 2  negotiations subsequent to the 20th of July of 2012.  And
 3  if you'll do that within ten days, I'd appreciate it.
 4           Anything else we need to talk about?
 5           MR. BATES:  No, your Honor.
 6           MS. MILLER:  No, your Honor.
 7           THE COURT:  Okay.  Send me an order.  Thanks a
 8  lot.
 9            (The matter concluded at 1:43 p.m.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                        CERTIFICATE

 2

 3  State of Utah        )
                         ss.
 4  County of Salt Lake  )

 5              I, Michelle Mallonee, a Registered
    Professional Reporter and Notary Public in and for the
 6  State of Utah, do hereby certify:

 7              That the proceedings of said matter was
    reported by me in stenotype and thereafter transcribed
 8  into typewritten form;

 9              That the same constitutes a true and correct
    transcription of said proceedings so taken and
10  transcribed;

11               I further certify that I am not of kin or
    otherwise associated with any of the parties of said
12  cause of action, and that I am not interested in the
    event thereof.
13
                WITNESS MY HAND at Salt Lake City, Utah,
14  this 28th day of September, 2012.

15

16

17                          _____
                            Michelle Mallonee, RPR, CSR
18                          Utah CSR #267114-7801
                            Expires May 31, 2014
19

20

21

22

23

24

25
                                                            16
```