IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| TIMOTHY R. BELL, an ) | |
| individual, et al, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 2:11-CV-271BSJ |
| ) | |
| COUNTRYWIDE BANK NA, et ) | |
| al, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| _____ ) | |

BEFORE THE HONORABLE BRUCE S. JENKINS

January 15, 2013

Motion Hearing

Laura W. Robinson, RPR, FCRR, CSR, CP
350 S. Main Street
144 U.S. Courthouse
Salt Lake City, Utah 84101-2180
(801)328-4800

**Appearances of Counsel:**

| | |
|---|---|
| For the Plaintiff: | Abraham C. Bates<br>Attorney at Law<br>Law Offices of Abraham C. Bates<br>2825 E. Cottonwood Parkway<br>Suite 500<br>Salt Lake City, Utah 84121 |
| For State of Utah: | Thomas D. Roberts<br>Wade A. Farraway<br>Attorneys at Law<br>Utah Attorney General's Office<br>160 East 300 South<br>PO Box 140857<br>Salt Lake City, Utah  84114 |
| For Countrywide<br>Bank NA: | Brian E. Pumphrey<br>Attorney at Law<br>McGuire Woods LLP<br>One Jame Ctr<br>901 E. Cary Street<br>Richmond, VA 23219-4030 |
| | Philip D. Dracht<br>Attorney at Law<br>Fabian & Clendenin<br>215 S. State Street<br>Suite 1200<br>Salt Lake City, Utah 84111 |
| | Amy Miller<br>Attorney at Law<br>McGuire Woods LLP (DC)<br>2001 K Street<br>Suite 400<br>Washington, DC 20006-1040 |

1          **Salt Lake City, Utah, January 15, 2013**

2                          * * * * *

3          THE COURT:  Good afternoon, and why don't we turn to

4     Bell and others versus Countrywide and others, it is

5     11-C-271, here today to consider plaintiffs' motion to

6     dismiss and a purported stipulated dismissal relating to

7     other parties.  And those who are making appearances, if you

8     will be kind enough to make a record for us, tell us who you

9     are and whom you represent.

10         MR. BATES:  Abraham Bates on behalf of the plaintiffs

11    Timothy and Jennifer Bell.

12         MR. ROBERTS:  Thom Roberts and Mr. Wade Farraway from

13    the Utah Attorney General's Office on behalf of the State of

14    Utah.

15         THE COURT:  Okay.

16         MS. MILLER:  Amy Miller on behalf of defendants.

17         THE COURT:  Okay.

18         MR. PUMPHREY:  Brian Pumphrey on behalf of defendants.

19         MR. DRACHT:  Philip Dracht on behalf of the

20    defendants.

21         THE COURT:  Okay.  Why don't we take the state matter

22    up first, Mr. Roberts.  I know that you're sort of new at

23    this point we have had Mr. Jensen here before, but I don't

24    think I have ever physically had Mr. Shurtleff here before

25    on this matter, but I am as much curious as anything else as

1    to the position of the state to begin with and what may be

2    the position of the state now.

3         MR. ROBERTS:  Thank you, Your Honor.  Thom Roberts on

4    behalf of the State of Utah.  As Your Honor is aware,

5    Mr. Shurtleff was the Attorney General of the State of Utah,

6    and we just had a change in administration to Mr. Swallow

7    who is currently the Attorney General.  But while

8    Mr. Shurtleff was the Attorney General, he did file and he

9    did sign and there has been filed a notice of dismissal

10   under Rule 41(a)(1) with regard to dismissing all of the

11   claims of all of the parties.

12        Mr. Shurtleff has I believe indicated in other places

13   like in the newspaper, has indicated that this was an

14   appropriate response with regard to dismissing this

15   particular case.  Your Honor has issued a ruling in this

16   case upholding the state's position that ReconTrust does not

17   have legal authority to conduct nonjudicial foreclosure

18   sales within the State of Utah.  That has been and continues

19   to be the State of Utah's position with regard to the

20   interpretation of National Banking Act, questions whether or

21   not we should be proceeding with regard to this particular

22   case.  Mr. Shurtleff decided that our efforts would be best

23   spent with regard to enforcing other cases.

24        As Your Honor is probably aware, although possibly

25   not, the Attorney General's office has been involved in five

1        cases actively with regard to this issue of the authority of

2        ReconTrust.  We are participating and have been

3        participating in all five of those cases.  One of them is

4        entitled Sunquist versus Federal National Mortgage

5        Association, which is pending in the Utah Supreme Court.

6        The Attorney General Office filed an amicus brief in that

7        case.  There are two cases pending in the Tenth Circuit

8        raising this identical issue with regard to the authority of

9        ReconTrust.  We have filed amicus briefs in both of those

10       cases.  Yesterday there was oral argument heard on the

11       Garrett versus ReconTrust case.  The State of Utah -- I have

12       requested the ability to be able to argue in that case.  The

13       Tenth Circuit panel decided not, they didn't want to hear

14       from me, declined to have the state participate in that

15       case.

16            This stipulation for dismissal I think was filed on

17       the 28th of December.  On January 3rd of this year, I filed

18       the amicus brief in the Deutscher versus ReconTrust case in

19       the Tenth Circuit.  Both of those cases have cited and

20       relied to Your Honor's decision in this case which we think

21       is correct.  We probably wish that your case had gone first,

22       and it was your case up there in the Tenth Circuit with

23       regard to this matter, but unfortunately that has not turned

24       out to be the case.

25            We fully anticipate the Tenth Circuit to rule

1     hopefully this year in either the <u>Garrett</u> or the <u>Deutscher</u>

2     case with regard to this issue, and everyone has cited to,

3     argued from your case, your decision was mentioned yesterday

4     in oral argument, so we're hoping to have that decision

5     happen.

6          Chances are that the Tenth Circuit will end up ruling

7     on that issue before we could get this case through to final

8     judgment, appealed, and up before the Tenth Circuit.  So

9     Mr. Shurtleff made the determination that our efforts ought

10    to be set and spent at those appellate levels with regard to

11    those cases rather than continuing in this case where there

12    might be other issues of litigation proceeding with regard

13    to this matter.  Because there have been --

14         THE COURT:  So you're an amicus in other cases?

15         MR. ROBERTS:  Yes, we have filed amicus cases in both

16    --

17         THE COURT:  You're a party in this case?

18         MR. ROBERTS:  We are a party in this case.  In the

19    <u>Deutscher</u> case we had requested to intervene as a party.

20    The lower court denied that.  And yes we are a party here,

21    we are an amicus there.  We have -- we are -- we did seek --

22         THE COURT:  Well, what is the -- what is the position

23    of the State of Utah now?

24         MR. ROBERTS:  The position is with regard to

25    ReconTrust?

1          THE COURT:  No, in regard to this case?

2          MR. ROBERTS:  The decision was made that this case

3     should -- Attorney General Shurtleff signed a document

4     stipulating to the dismissal of this case so it is the

5     position that dismissal was appropriate.

6          THE COURT:  Mr. Jensen a few months ago was here

7     arguing very intensively about the propriety and

8     desirability of being intervenor in this particular matter.

9     Apparently the state has changed its mind.

10          MR. ROBERTS:  Um, yes, Your Honor.  The state did

11     change its mind.  There were some concerns -- the short

12     answer is yes, Your Honor.

13          THE COURT:  Okay.  But the position today is

14     different, as mild as I can put it, than it was when the

15     petition was filed to intervene?

16          MR. ROBERTS:  That is correct, Your Honor.  It is my

17     understanding that that was back, I believe, in the spring,

18     and there were some possibly some hopes and concerns with

19     regards to moving these cases forward.  The Attorney General

20     made the determination based upon the two pending cases in

21     the Tenth Circuit that that would be the appropriate way to

22     go.  Not everyone might have come to that conclusion or held

23     that to be the most appropriate course.  Mr. Shurtleff did,

24     however.

25          THE COURT:  Okay.  Well, I appreciate that.  I am a

1    believer in cases being resolved appropriately.  Thank you.

2         MR. ROBERTS:  Thank you.

3         MR. BATES:  Your Honor?

4         THE COURT:  And Mr. Bates, I am interested in your

5    pending motion.

6         MR. BATES:  Your Honor, I would first like to address,

7    assuming the court is familiar with the characterization or

8    reasoning set forth for Mr. Shurtleff's exercise of his

9    prerogative while he was in office.

10        THE COURT:  He didn't state any reason.

11        MR. BATES:  What is that?

12        THE COURT:  He didn't state any reason.

13        MR. BATES:  Well he did actually.  And the stated

14   reason was that he didn't believe that it would be a wise

15   use of the state's resources.

16        THE COURT:  No.  No.  No.  In the notice that was

17   filed with this court, there was no reason.

18        MR. BATES:  Understood.  But on the public record and

19   therefore I would argue subject to judicial notice, he

20   claimed that he attached his signature to the 41(a)(1)

21   motion without consultation with counsel of record because

22   it would not be a wise use of the state's resources.

23        THE COURT:  Yeah, well I --

24        MR. BATES:  And I firmly disagree with that position

25   given the state's previous position in this case, and I also

1    respectfully didn't disagree with Mr. Roberts' position.

2    And once again, I am lending my comments as to the state's

3    claims as to my --

4        THE COURT:  I am really more interested in your motion

5    that you filed on the 17th of December, if I remember

6    correctly, and the relief that you asked for in that motion.

7        MR. BATES:  Right.  So the pending motion, the

8    41(a)(2) motion was filed by me but was done in consultation

9    and was reviewed by defendants in addition to communications

10   with the Office of the Attorney General to confirm that they

11   would not object to such motion.  That motion required an

12   order of this court in order to dismiss the claims based on

13   terms that are proper potentially subjecting the settlement

14   to judicial review.

15       While that motion is technically still pending, the

16   41(a)(1) motion which bears both my signature and

17   Mr. Shurtleff's and defendants --

18       THE COURT:  I don't have your signature.

19       MR. BATES:  I believe my digital signature was

20   attached.

21       THE COURT:  No, I don't have your signature.  That was

22   not signed by you.  But let's deal with your December 17th

23   motion.

24       MR. BATES:  Okay.  Let me make clear.  I am duty bound

25   by the settlement agreement to effectuate the dismissal of

9

1    my clients' claims which initially, pursuant to defendant's

2    proposal, was to be done by a 41(a) stipulation until the

3    State of Utah by written correspondence to both parties

4    refused to execute the 41(a)(1) voluntary stipulated

5    dismissal precisely because they were not a party to the

6    settlement and because at that point in time their position

7    was we continue, we are --

8         THE COURT:  Well, you tell me that in your petition.

9         MR. BATES:  Right.  Right.  Therefore, the motion

10   was -- I drafted a 41(a)(2) motion, provided it to counsel

11   for defendants for review, provided a courtesy copy to the

12   state and thereby filed it.

13        THE COURT:  Well you asked for certain relief.

14        MR. BATES:  Well, my understanding of the Rules of

15   Civil Procedure, and I am happy for the court to correct my

16   understanding is that the 41(a)(1) notice effectively trumps

17   that -- the prior motion.  And to any extent that the two

18   motions interfere with each other, I am bound pursuant to

19   settlement agreement to head off any such conflict by here

20   today in open court orally withdrawing the 41(a)(2) motion.

21        THE COURT:  Yeah, let me just ask you a question or

22   two on the motion that is filed.

23        MR. BATES:  Yes.

24        THE COURT:  Among other things in the order that was

25   submitted by you, you said seeking dismissal.

1           MR. BATES:  Correct.

2           THE COURT:  I am in favor of dismissal.  It sounds to

3     me like you ended up with a pretty good deal.  That is fine.

4     The fourth section of the proposed order says this action

5     shall be re-captioned State of Utah versus ReconTrust

6     Company NA.  Where did that come from?

7           MR. BATES:  As I think defendants will acknowledge,

8     that was based on their edits and was not included in my

9     original proposed language.  The state responded that it

10    felt the court was highly unlikely to re-caption the matter

11    as such, but certainly communicated to me that the

12    defendants and the state continued -- had a present intent

13    to continue.

14          THE COURT:  Then you say all existing deadlines shall

15    remain in force as to the State of Utah and ReconTrust.

16          MR. BATES:  Right.  Correct.

17          THE COURT:  That was the fifth relief that you asked

18    for.

19          MR. BATES:  Correct.

20          THE COURT:  Now, your motion was never withdrawn.

21          MR. BATES:  It has not been formally withdrawn yet,

22    no, Your Honor.

23          THE COURT:  Now, there was a purported notice signed

24    by some of the parties.  That particular notice was not

25    physically signed by you.

1          MR. BATES:  Correct.

2          THE COURT:  And that particular notice was not signed

3     by local counsel on your behalf.

4          MR. BATES:  I do not have --

5          THE COURT:  Have you ever seen that?

6          MR. BATES:  Are you referring to Mr. Dracht?

7          THE COURT:  Have you ever seen that?

8          MR. BATES:  I have seen it, and there were a number of

9     e-mail exchanges.

10          THE COURT:  No, I'm talking to you.

11          MR. BATES:  Okay.

12          THE COURT:  Have you seen it?

13          MR. BATES:  I may not have seen the document that the

14     court is specifically referring to right now.

15          THE COURT:  Okay.  Well let me hand it down to you,

16     the one that I have seen.

17          MR. BATES:  I have seen this document.

18          THE COURT:  Now your signature, your physical

19     signature, does not appear thereon.

20          MR. BATES:  That is correct.

21          THE COURT:  And Mr. Dracht's signature on your behalf,

22     his signature, doesn't appear thereon.

23          MR. BATES:  No.  But there is the astrict indication.

24          THE COURT:  You're interested in settling this case.

25          MR. BATES:  I am bound to dismiss my clients.

```
 1              THE COURT:  You're interested in settling this case.

 2              MR. BATES:  Yes.  Well --

 3              THE COURT:  You want to settle the case.

 4              MR. BATES:  I would dispute that characterization

 5       because there are plaintiffs' claims and there are the

 6       state's claims.  I am co-counsel in other matters.

 7              THE COURT:  No, on behalf of Bell --

 8              MR. BATES:  Yes.

 9              THE COURT:  -- you want to settle this case.

10              MR. BATES:  As it relates to my clients, yes.

11              THE COURT:  You're happy with your settlement of this

12       case?

13              MR. BATES:  Yes.  My clients are happy with the

14       settlement terms, yes.

15              THE COURT:  Okay.  And you would like the court to

16       approve the settlement?

17              MR. BATES:  Well, that was the proposal in the motion

18       that was initially filed subjecting the settlement

19       potentially to judicial review.

20              THE COURT:  Well, it is subject to judicial review for

21       many reasons, and we'll go into those in a minute, but

22       you're happy with it?

23              MR. BATES:  My clients are satisfied with it, yes.

24              THE COURT:  Okay.  That's fine.  That's fine.  And

25       that is all I have as far as you're concerned.
```

1          MR. BATES:  Okay.

2          THE COURT:  You can give me back my copy.

3          MR. BATES:  If I may make one more comment.  I have no

4     authority to speak on behalf of or bind the Office of the

5     Attorney General.

6          THE COURT:  I recognize that.

7          MR. BATES:  But I have had communications with

8     Mr. Swallow indicating that his administration intends to

9     fully prosecute claims like these.

10          THE COURT:  Well, let them speak for themselves.

11          MR. BATES:  And that he would have never executed this

12     dismissal.

13          THE COURT:  Let them speak for themselves.

14          Now I'm interested in the defendants.  Counsel

15     suggests that it was your suggestion to change the title of

16     the case in his initial motion.  And I am curious as to the

17     authority for something like that.

18          MR. PUMPHREY:  Your Honor, Brian Pumphrey.  The

19     initial plan was when the Utah AG's Office indicated that

20     they wanted to proceed with litigation, we had proposed

21     initially a stipulation of dismissal that at that time would

22     have only resolved the claims between the defendants and the

23     Bells.  The Utah AG's Office declined to sign off on that

24     because they thought it could some how impact their case

25     which at the time they were fully planing on proceeding.  So

1     when we were preparing the Rule 41 motion which I understand

2     Mr. Bell -- Mr. Bates intends to withdraw --

3          THE COURT:  Has he withdrawn it?

4          MR. PUMPHREY:  He has withdrawn it.

5          THE COURT:  It is here.

6          MR. PUMPHREY:  So that has been withdrawn.  I think it

7     was more of a housekeeping issue that we thought that at

8     that time we were under the impression that the case was

9     going to be going forward, we were engaging in discovery, we

10    were having meet and confers.

11         THE COURT:  Well, why change the title?

12         MR. PUMPHREY:  Because the Bells were no longer in the

13    case.

14         THE COURT:  How can you repeal history?

15         MR. PUMPHREY:  I have had many cases where when

16    parties have left where the title has changed.  It certainly

17    is not something that we thought was absolutely critical,

18    but we thought it would be cleaner because that is what --

19    it would reflect the parties who would actually be in the

20    case.

21         THE COURT:  Well apparently Mr. Shurtleff had a change

22    of mind.

23         MR. PUMPHREY:  That is my understanding.

24         THE COURT:  Well, did you talk to him?

25         MR. PUMPHREY:  Personally I did not, no.

1          THE COURT:  Who talked to him?

2          MR. PUMPHREY:  One of my partners.

3          THE COURT:  Whose name is?

4          MR. PUMPHREY:  Jerry Kilgore.

5          THE COURT:  Is he around?

6          MR. PUMPHREY:  He is not here today, no.

7          THE COURT:  Okay.  And so local counsel didn't talk to

8     him?

9          MR. PUMPHREY:  To Mr. Shurtleff?

10          THE COURT:  I'm sorry?

11          MR. PUMPHREY:  So you're saying did Mr. Dracht speak

12     with Mr. Shurtleff?

13          THE COURT:  Well, he wasn't the one that talked to

14     Shurtleff.

15          MR. PUMPHREY:  No, no, Mr. Kilgore spoke to

16     Mr. Shurtleff.  Mr. Shurtleff called Mr. Kilgore.  My

17     understanding is, again I was not on the call, my

18     understanding is that Mr. Shurtleff called Mr. Kilgore on or

19     about December 19th and stated that he had decided that he

20     was going to dismiss the case.

21          THE COURT:  Okay.  Now, as I understand it, Mr. Bates

22     on behalf of the Bells needs to sign the so-called notice of

23     dismissal.  Now the sign, in quotation marks, is a term of

24     art which is governed by national and local rules.  The form

25     in which the notice was signed doesn't comply with the

1    national but particularly the local rule.  And as a result,

2    I have a notice, or a so-called stipulation, that purports

3    to be signed by Mr. Bates, but according to the rule hasn't

4    been signed by Mr. Bates.  And I'll refer counsel to the

5    administrative procedures that exist so-called having to do

6    with the electronic filing and merely point out that the

7    deficiency in dealing with an added electronic signature,

8    so-called with authority, has to bear the signature of the

9    signing attorney.  That is to say the one who is submitting

10   the document.

11        Absent that signature, the notice is deficient and

12   incomplete.  But Mr. Bates has told me in open court here,

13   and I'll have him reiterate it, that he would like to join,

14   as I understand it, in a stipulation of dismissal.  Let me

15   ask him again.  Is that correct, Mr. Bates?

16        MR. BATES:  Yes, Your Honor.  The settlement agreement

17   requires me, whether it is under 41(a)(2) or 41(a)(1), to

18   agree to dismiss my clients' claims.

19        THE COURT:  Well, I want to try to repair, if

20   possible, the difficulty I had with the notice.  And I think

21   that with your statement on the record, and your

22   satisfaction and the satisfaction of your client with what

23   appeared to be a reasonable settlement under the

24   circumstances, the kind of settlement that might possibly be

25   a pattern for people down the road, and your acknowledgment

17

1     in open court and on the record the existence of the

2     agreement on your part to agree to the dismissal of all of

3     the pending actions.

4          MR. BATES:  Your Honor, if it would please the court,

5     I would be happy here today in open court to attach my

6     physical signature --

7          THE COURT:  No, I think the record is satisfactory.

8          MR. BATES:  -- in open court.

9          THE COURT:  I think the record is satisfactory.  But I

10    do think that we need to memorialize that and why don't we

11    have you earn your fee by preparing a modest order

12    memorializing the fact and stating in your motion that you

13    agree to this stipulation to dismiss everything.

14         MR. BATES:  Your Honor, the state has reminded me that

15    I would not be able to attach my signature to a

16    contemporaneous as of dated today motion given the present

17    administration's contrary intentions to Mr. Shurtleff's.  I

18    would be happy to attach my signature to the form of the

19    dismissal that included Mr. Shurtleff's signature when --

20         THE COURT:  Well, you can file a duplicate copy of

21    that notice with your signature.

22         MR. BATES:  I will do so.

23         THE COURT:  You can get a photostatic of that from the

24    clerk, or downstairs from the clerk, or off your own

25    computer.

1          MR. BATES:  Understood.

2          THE COURT:  And file that with the court.  And I will

3     find that to be sufficient based upon your representations

4     here in open court and on the record.

5          MR. ROBERTS:  Your Honor, Thom Roberts on behalf of

6     the State of Utah.  Based upon the concern which I was

7     frankly was unaware of with regard to the finality of that

8     stipulated dismissal, as I indicated, there has been a

9     change in administration.  Mr. Shurtleff no longer has the

10    authority to bind the office and so if that --

11         THE COURT:  I'm not asking him to.

12         MR. ROBERTS:  So but his -- but if this -- his

13    signature now he does not have the authority to sign on

14    behalf of the Attorney General's Office.

15         THE COURT:  He is not asking that you sign it again.

16         MR. ROBERTS:  No, but the issue is whether or not --

17    if Your Honor deems it appropriate to accept his signature

18    that he made while he was attorney general and give it

19    effect after he is no longer --

20         THE COURT:  I have got his signature on the defective

21    notice.  The defective notice lacked his signature.  It is

22    his signature that I am --

23         MR. BATES:  Your Honor, those documents are one in the

24    same.

25         THE COURT:  I'm sorry?

1          MR. BATES:  The document containing Mr. Shurtleff's

2     signature, is the same document containing what the court

3     has identified as my defective electronic signature.

4          THE COURT:  And it is -- I understand what you're

5     saying, but we'll let Mr. Bates physically sign a duplicate

6     copy and file it with the court.

7          MR. ROBERTS:  I was just raising for Your Honor the

8     question about, you know, to the extent that this purports

9     to be effective --

10         THE COURT:  What does the State of Utah want to do?

11         MR. ROBERTS:  The State of Utah made a decision under

12    Mark Shurtleff's administration to dismiss that.

13         THE COURT:  Okay.  Are you changing that decision?

14         MR. ROBERTS:  It had been our position that this was

15    complete as of the time that it was filed.

16         THE COURT:  It wasn't completed at the time that you

17    filed it because it lacked a lawful signature of Mr. Bates.

18         MR. ROBERTS:  And to the extent that was not effective

19    when it was filed, a new filing would require a signature

20    and Mr. Shurtleff no longer has the authority to --

21         THE COURT:  I merely indicated that Bates has

22    indicated here in open court and on the record that he

23    acknowledges that he agrees to that.

24         MR. ROBERTS:  To the extent that the court wants to

25    accept this pleading as being a contemporaneous pleading

1        today, or when Mr. Bates signs it with Mr. Shurtleff's

2        signature he is no longer the Attorney General and so I

3        question whether or not he has the authority today to sign a

4        stipulation for a dismissal.

5            THE COURT:  Well, I'm not dealing with that.  I am not

6        dealing with his authority today.  I thought the position of

7        the State of Utah was as you stated.

8            MR. ROBERTS:  The position of the State of Utah was

9        that this case was dismissed on the 28th.

10           THE COURT:  Is that still your position?

11           MR. ROBERTS:  It was our understanding that everyone

12       had signed it, Your Honor, and this is new information to me

13       so I only know what I know.

14           MR. BATES:  Your Honor, if I may, I just want to make

15       clear that at no point have I stipulated or do I agree to a

16       global dismissal as contained and represented in the 41(a)

17       notice.  I agreed to attach my electronic signature to that

18       document for the narrow purpose of dismissing my clients'

19       claims and not the entire case in general even though once

20       again I have no standing, it was not my intention, and to

21       characterize my position as I approve of the practical

22       effect of the entire, you know, document and the dismissal

23       of all parties claims with prejudice that is inaccurate.  I

24       agreed to execute the document because at defendants'

25       request it effectuated the dismissal of my clients' claims

1    narrowly as part of the settlement.

2         THE COURT:  Well, I'm in doubt as to what you want me

3    to do.  I thought we had resolved it.

4         MR. DRACHT:  Your Honor, may I?

5         THE COURT:  Sure.

6         MR. DRACHT:  There has been some discussion about

7    filing and e-filing.  Your Honor has characterized

8    Mr. Bates' filing as -- or signature as somehow not

9    sufficient.

10        THE COURT:  That is correct.

11        MR. DRACHT:  And in looking at Page 3 of the

12   stipulated motion, the first signature block says by counsel

13   and it indicates a slash S.  I can wait for Your Honor to

14   pull up the motion.

15        THE COURT:  No, you go ahead.

16        MR. DRACHT:  Slash S Abraham Bates.

17        THE COURT:  I saw that.

18        MR. DRACHT:  And there are two asterixes and below

19   that it says, filing counsel has received Mr. Bates consent

20   to upload this motion and his signature electronically.

21        THE COURT:  Absolutely true.

22        MR. DRACHT:  And I have an e-mail from Mr. Bates

23   saying please upload this document and sign on by behalf.

24        THE COURT:  That is fine.

25        MR. DRACHT:  Under the administrative procedures for

1    this court, subsection -- or Roman Numeral two section A

2    number two, signatures of other attorneys provides for when

3    a document to be filed requires a signature of attorneys

4    other than that of a filing attorney, such as a stipulation,

5    the attorney may obtain approval from the other attorneys to

6    state that the other attorney has authorized the filing

7    attorney to electronically sign the document.

8           THE COURT:  I don't have any trouble with that.

9           MR. DRACHT:  And it appears that that is what happened

10   here.

11          THE COURT:  No.  No.  What is lacking, counselor, is

12   you didn't sign it.  Read the next section.

13          MR. DRACHT:  Well, I certainly signed the stipulation.

14   I didn't sign below Mr. Bates signature.

15          THE COURT:  That is correct, you didn't sign that.

16          MR. DRACHT:  And Your Honor, we have submitted a

17   number of stipulations in this court under the same

18   manner --

19          THE COURT:  I am just pointing out --

20          MR. DRACHT:  -- and Your Honor has not ever indicated

21   that this is an issue.

22          THE COURT:  There it is.  You live with it.  I live

23   with it.  That is not my problem, that is your problem.

24          MR. DRACHT:  Okay.  All right.  Well, Mr. Bates has

25   already consented and has signed the document.

1      THE COURT:  He has indicated that he is happy with the

2  results of --

3      MR. DRACHT:  Your Honor, so here we are.

4      THE COURT:  That is fine.  He has indicated that he

5  has joined in as far as I'm concerned.  Maybe I should have

6  assigned you the onerous task of sending me a small order.

7      MR. DRACHT:  I certainly would take that -- if you

8  assign me that task, we will present an order to the court.

9      THE COURT:  That would be fine.  And I simply want to

10  say something in passing of no great consequence.  In

11  litigation in the courtroom, whether you're the Attorney

12  General of the State of Utah or of the United States or

13  anyone else who practices here, we expect directness,

14  candor, laying it out for the court, so that everybody knows

15  what everybody has got, and everybody knows the reasons why.

16  That is the only way any of us can function whether you're

17  an officer of the court or whether you're a judge.  That is

18  the only way it really works.  Candor and

19  straightforwardness and recognition on occasion that there

20  may be a conflict or at least the appearance of one, and

21  that one should be as careful in those kinds of situations

22  as one can possibly be.  But I have delayed these other

23  fellows and ladies on another matter.  I would appreciate it

24  if you would send me a modest order.  Thank you very much.

25      MR. DRACHT:  Thank you.

1          THE COURT:  We're going to take a two minute break and

2    let people set up and go from there.

3          MR. BATES:  May I make one final comment?  No.

4          (Whereupon, the hearing concluded at 2:09 p.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1    STATE OF UTAH              )

2                               )ss

3    COUNTY OF SALT LAKE        )

4

5              I, Laura W. Robinson, Certified Shorthand

6    Reporter, Registered Professional Reporter and Notary Public

7    within and for the County of Salt Lake, State of Utah, do

8    hereby certify:

9              That the foregoing proceedings were taken before

10   me at the time and place set forth herein and were taken

11   down by me in shorthand and thereafter transcribed into

12   typewriting under my direction and supervision;

13             That the foregoing pages contain a true and

14   correct transcription of my said shorthand notes so taken.

15             In witness whereof I have subscribed my name and

16   affixed my seal this 12th day of December, 2013.

17

18                           _S/ Laura W. Robinson_____

19                           Laura W. Robinson

20                           RPR, FCRR, CSR, CP

21

22

23

24

25
```